IOWA INVESTORS BAKER, ANTHONY DRAKE, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Iowa Investors Baker
Docket No. 2413-91
United States Tax Court
T.C. Memo 1992-490; 1992 Tax Ct. Memo LEXIS 510; 64 T.C.M. (CCH) 611; August 27, 1992, Filed *510 An order will be issued granting respondent's and denying petitioner's motion for partial summary judgment and decision will be entered for respondent. For Petitioner: John W. Sunnen. For Respondent: Sylvia L. Shaughnessy and Roberta D. Amaya. GERBER
GERBER
MEMORANDUM OPINION GERBER, Judge: We are asked to consider whether the period for assessment had expired at the time the Commissioner had issued and mailed the notice of final partnership administrative adjustment (FPAA) as to the partnership. More specifically, we must decide whether a properly authorized person executed the consent to extend the assessment period. The parties address the issue in two different contexts. First, we consider whether the person who executed the consent was authorized in writing and acting on behalf of the partnership. If we do not find that he was so authorized, then we must consider whether that same person had been properly designated as the tax matters partner (TMP). This case was part of a litigation group for which the test case Diego Investors - IV v. Commissioner, T.C. Memo. 1989-630, was tried and decided. By a November 1, 1991, order, petitioner was required *511 to show cause why a decision which is consistent with the test case should not be entered. Petitioner, by a December 12, 1991, response, agreed that another trial on the issues previously decided in the test case was unnecessary. In this regard, petitioner has agreed that the determination in the November 8, 1990, FPAA was correct. Petitioner, however, contends that respondent mailed the FPAA after the period for assessment had expired because the consent executed by the general partner was not effective to extend the normal 3-year period for assessment. The parties have filed cross-motions for partial summary judgment with respect to this issue. This case is ripe for summary judgment. There is no disagreement as to any material fact, and resolution of these motions may be dispositive of this case. Rule 121; [1]Shiosaki v. Commissioner, 61 T.C. 861, 862-863 (1974). If petitioner is successful, the parties agree that the period for assessing tax with respect to the Iowa Investors Baker partnership had expired. If respondent is successful, it is agreed that the Commissioner's determination was not in error. *512 Background
Iowa Investors Baker (Iowa) is a general partnership under the laws of the State of California. At the time of the filing of the petition herein, Iowa's principal place of business was San Diego, California. Iowa's 1982 Federal partnership return was timely filed as of April 15, 1983, and was signed by E.C. Smith in his capacity as general partner and also as the return preparer. There is no space or block on the return [2] for designating a tax matters partner (TMP). A TMP was not designated on the return or on any attachment thereto. When the audit of Iowa's 1982 return commenced, the Commissioner's revenue agent determined that Anthony Drake (Drake) was the TMP in accord with section 6231(a)(7)(B) and section 301.6231(a)(7)-1T(m)(1) and (2), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6792 (Mar. 5, 1987), because he held the largest (27.902 percent) interest in Iowa for 1982. Prior to the expiration of the period *513 prescribed in section 6229(a) for assessing income tax attributable to Iowa's 1982 taxable year, the Commissioner mailed a notice of the beginning of an administrative proceeding to Drake, as TMP, at Drake's home address and at Iowa's business address. The Commissioner, by letters dated June 20, 1985, also corresponded with Drake, as TMP, at both addresses in connection with the audit of Iowa's 1982 taxable year. On June 28, 1985, Drake sent a letter to the Commissioner's revenue agent stating that "Mr. Edward C. Smith is designated as the Tax Matters Partner for Iowa Investors Partnership, as well as the Managing General Partner." The Commissioner's revenue agent did not respond to that letter and no designation of a TMP which complied with all of the provisions of section 301.6231(a)(7)-1T(a) through (f), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6791 (Mar. 5, 1987), was received by the Commissioner. Smith, as general partner, was eligible to serve as TMP at the time of Drake's letter. Prior to the expiration of the 3-year period for assessment, Smith executed on September 3, 1985, a Special Consent to Extend the Time to Assess Tax Attributable to Items of *514 a Partnership (Form 872-0 or consent). The consent had two different places for signature on behalf of the partnership. The designations for signature were either "Tax Matters Partner Signature Here" or "Authorized Representative Sign Here". The consent contains instructions permitting the TMP "or any person authorized by the partnership in writing" to extend the period for assessment. Smith signed the consent on the line designated "Tax Matters Partner Signature Here" in good faith and without intent to mislead the Internal Revenue Service or obtain a litigation advantage. The Commissioner's authorized representative signed the consent on September 10, 1985. Following the execution of the consent by both parties, all subsequent correspondence from the Commissioner's revenue agent was addressed to Smith as TMP of Iowa. On March 27, 1989, Smith filed a petition in bankruptcy and, as of that date, was no longer TMP. On November 8, 1990, the Commissioner issued an FPAA to Drake because Iowa had not made another designation of a TMP for that year and Drake was, at that time, the general partner and continued to be the partner with the largest percentage interest. Article *515 V of the Iowa partnership agreement was labeled "Management Fees" and contained the following: No partner shall have any power to manage any investment, to incur any debt on behalf of the partnership, or to do any other act on behalf of the partnership. The partners, and each of them do hereby delegate to EDWARD C. SMITH * * * the power to manage all partnership affairs, including, but not limited to, communication with any broker or agent who is authorized by the partnership to execute agreements on its behalf, bookkeeping, tax services, and communications on behalf of the partnership to individual partners. By execution of this agreement, each partner agrees that his/her interest in this partnership is entirely passive; he/she has no active part in its management or control. As and for consideration for providing management services, as outlined above, the partnership agrees to pay to Edward C. Smith an amount equal to three percent of the net asset value of the partners' interest upon conception; said amount to be paid on that date. Article VII, which is entitled "Miscellaneous", contains the following pertinent requirement: 2. * * * Any notice to be given to the partnership *516 shall be sent by first-class mail to Edward C. Smith * * *. Smith signed a lease agreement as managing general partner. The lease agreement was the central document from which the partners sought tax benefits. Discussion
Because the Commissioner issued the FPAA more than 3 years after the timely filing of the 1982 partnership return (see sec. 6229(a)), petitioner has made a sufficient showing to shift the burden of going forward with evidence to respondent to show an exception to the normal 3-year period for assessment. Adler v. Commissioner, 85 T.C. 535, 540 (1985). Respondent came forward with the consent, which on its face would appear to extend the period for assessment to include the date the FPAA was issued and mailed. See sec. 6229(b)(1). [3] Accordingly, the burden of going forward shifts back to petitioner to show that the consent is invalid or ineffective in extending the assessment period beyond the normal 3-year period. Adler v. Commissioner, supra at 540-541. *517 Petitioner argues that Smith, in executing the consent, did not have the requisite authority to bind the partnership. As a result, petitioner argues, the consent was invalid and did not have the effect of extending the 3-year period for assessment. Respondent, based upon the same facts, argues for the opposite result. Section 6229(b)(1)(B) permits the extension of the assessment period with respect to all partners by means of an agreement entered into by the Commissioner and the TMP or "any other person authorized by the partnership in writing to enter into such an agreement". Petitioner contends that Smith was not the TMP or an authorized person under the statute. Respondent contends that Smith was either the TMP or an authorized person under the statute. We consider each aspect separately. Was Smith an Authorized Person Within the Meaning of Section 6229(b)(1)(B)?
In a similar case, we considered whether the person who executed a consent was either the TMP or an authorized person within the meaning of the statute. Cambridge Research v. Commissioner, 97 T.C. 287 (1991). After holding that the person in question was not the TMP, the Court analyzed *518 the "authorized person concept" contained in the statute and temporary procedural regulations. See sec. 301.6229(b)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6789 (Mar. 5, 1987). After finding that the temporary procedural regulations had not been complied with, we held that those regulations are permissive, not mandatory, and that a person could otherwise be found to be authorized even without regulatory compliance. Cambridge Research v. Commissioner, supra at 295. After considering various aspects of State law, the partnership agreement, and other legal matters, it was concluded in Cambridge that the partnership agreement was sufficient to meet the requirement of a writing in section 6229(b)(1)(B). The parties here each refer to Cambridge in support of their respective and diametrically opposed positions. We begin our analysis by considering whether the Iowa partnership agreement authorized Smith to extend the assessment period and, if so, whether the agreement was a "writing" within the meaning of section 6229(b)(1)(B). The Iowa partnership agreement contained the following grant of authority to Smith: the power *519 to manage all partnership affairs, including, but not limited to, communication with any broker or agent who is authorized by the partnership to execute agreements on its behalf, bookkeeping, tax services, and communications on behalf of the partnership to individual partners. * * * Petitioners argue that this language limited Smith's authority to dealings with "brokers or agents who [are] authorized by the partnership to execute agreements on its behalf". Petitioner would have us believe that Smith's authority was limited to the operational portion of Iowa's business activity and that he had no authority to act on behalf of the partnership regarding tax matters. Petitioner, however, acknowledges that the first contact with the partnership by the Commissioner's revenue agent was, of necessity, with Smith. But petitioner goes on to contend that the regulations and manual require a TMP to execute a consent to extend the period for assessment. That issue is addressed in the Cambridge case where those regulations were found to be permissive and not mandatory and we find it unnecessary to repeat that discussion here. See also Amesbury Apartments, Ltd. v. Commissioner, 95 T.C. 227 (1990). *520 Respondent argues that the language "all partnership affairs, including, but not limited to" is a broad grant of authority to manage, including the execution of consents. We agree with respondent that the language of the agreement would not preclude Smith's execution of a consent. However, because there was no specific grant of authority to execute a consent, we will consider whether a general partner has such authority under State law. The California Uniform Partnership Act, Cal. Corp. Code section 15009(1) (West 1991), provides that partners are agents of the partnership and, as such, bind the partnership unless a partner has no authority to act in a particular matter. Similarly, California courts have held that a general partner is an agent of and may bind a partnership. McCollum v. Steitz, 67 Cal. Rptr. 703 (1968). Also, a partner's acts are presumed to be within the scope of partnership business if open to third-party observation, consistent with the existence of an agency relationship, and where a third party would be justified in believing an agency relationship existed. Blackmon v. Hale, 463 P.2d 418 (Cal. 1970). [4]
*521 We note that only Smith was expressly empowered to act on behalf of the partnership in all business matters. There was no specific reference to the partnership provisions contained in the Internal Revenue Code (secs. 6221-6233). It would be anomalous to find that Smith was so empowered and yet unable to bind the partnership in matters concerning the reporting of tax. This is especially true here where Smith was also the return preparer and signed the return on behalf of the partnership as a general partner. We also considered the language in the partnership agreement which specifically extended Smith's authority to "bookkeeping, tax services, and communications on behalf of the partnership to individual partners." Finally, the largest percentage partner (Drake), whom the Commissioner initially had determined was TMP, had attempted to designate Smith as TMP. In Cambridge Research v. Commissioner, 97 T.C. at 298-299, we concluded that Congress, in enacting sections 6221-6233, intended that certain aspects of the determination of a partner's tax liability are the business of the partnership subject to those sections. Accordingly, we hold that Smith was *522 undertaking Iowa partnership business and, thus, acting within the scope of his agencies under either the California Uniform Partnership Act [5] or the Iowa partnership agreement. We find no limitation on Smith's ability to execute the consent, even though Smith executed the consent form on the portion designed for the signature of a TMP. Having found that Smith was empowered to extend the period for assessment on behalf of Iowa, it is unnecessary to consider whether Smith had been properly designated as TMP at the time of executing the consent to extend the period for assessment. To reflect the foregoing, An order will be issued granting respondent's and denying petitioner's motion for partial summary judgment and decision will be entered for respondent.
Footnotes
1. Rule references are to this Court's Rules of Practice and Procedure. Section references are to the Internal Revenue Code in effect for the period under consideration.↩
2. Form 1065 (U.S. Partnership Return of Income) for 1982.↩
3. SEC. 6229. PERIOD OF LIMITATIONS FOR MAKING ASSESSMENTS. (b) Extension by Agreement. -- (1) In general. -- The period described in subsection (a) (including an extension period under this subsection) may be extended -- (A) with respect to any partner, by an agreement entered into by the Secretary and such partner, and (B) with respect to all partners, by an agreement entered into by the Secretary and the tax matters partner (or any other person authorized by the partnership in writing to enter into such an agreement), before the expiration of such period.↩
4. Blackmon v. Hale, 463 P.2d 418, 423 (Cal. 1970), contains the following language on this subject: The apparent scope of the partnership business depends primarily on the conduct of the partnership and its partners and what they cause third persons to believe about the authority of the partners. Ostensible agency or acts within the scope of the partnership business are presumed "where the business done by the supposed agent, so far as open to the observation of third parties, is consistent with the existence of an agency, and where, as to the transaction in question, the third party was justified in believing that an agency existed." * * * [Citations omitted.]↩
5. California and Connecticut both follow uniform partnership acts, and accordingly the analysis in Cambridge Research v. Commissioner, 97 T.C. 287↩ (1991), supports our conclusion here.