GEORGETOWN PETROLEUM-EDITH FORREST, D & D PARTNERSHIP, A PARTNER OTHER THAN THE TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Georgetown Petroleum v. Commissioner
Docket No. 16457-91
United States Tax Court
T.C. Memo 1994-13; 1994 Tax Ct. Memo LEXIS 5; 67 T.C.M. (CCH) 1952; 73 A.F.T.R.2d (RIA) 415; January 10, 1994, Filed *5 Decision will be entered for respondent. For petitioner: Felice Taub-Joyce and Warren W. Davis. For respondent: James A. Kutten. JACOBS
JACOBS
MEMORANDUM OPINION JACOBS, Judge: On February 25, 1991, respondent mailed a notice of final partnership administrative adjustment (FPAA) addressed to the tax matters partner (TMP) of Georgetown Petroleum-Edith Forrest, Ltd. (the Partnership). The FPAA set forth adjustments to the amount of ordinary income and the amount of property qualifying for an investment tax credit reported on the Partnership's return (Form 1065) for 1983. D & D Partnership, one of the Partnership's limited partners, acting in a capacity other than as the Partnership's tax matters partner, contests these adjustments on the grounds that the period of limitations on assessment expired prior to respondent's mailing of the FPAA. In order to determine whether the FPAA was timely mailed, we must decide whether a Form 872-0, Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, signed by Robert K. Schader (Schader) on January 5, 1987, was properly executed. Some of the facts have been stipulated and are found accordingly. The stipulation *6 of facts and attached exhibits are incorporated herein by this reference. The principal place of business of the Partnership at the time the petition was filed was Colorado. Background
The Partnership is a Colorado limited partnership whose Certificate of Limited Partnership was filed for record on September 28, 1982. From September 1982 through January 1986, the Partnership's sole general partner was Georgetown Petroleum, Inc. (GPI), a Colorado corporation. In January 1986, GPI merged into Petro-Logic, Inc. (PLI), another Colorado corporation. GPI and PLI were both wholly owned subsidiaries of Petro-Logic Petroleum, Ltd. (PLPL), a publicly traded Canadian corporation. Schader was president of PLPL, GPI, and PLI. He was also a limited partner of the Partnership. GPI entered into a Plan and Agreement (Merger Agreement) with PLI on January 6, 1986. PLI adopted Articles of Merger under the laws of Colorado on January 30, 1986, and filed them for record on March 17, 1986. The Merger Agreement and Articles of Merger provide, in relevant part: (a) Georgetown Petroleum, Inc., a Colorado corporation, shall merge into Petro-Logic, Inc., a Colorado corporation. Petro-Logic, *7 Inc. shall be the surviving company. (b) At the effective time of the Merger, the separate existence of Georgetown Petroleum, Inc. shall cease and Georgetown Petroleum, Inc. shall be merged into the Surviving Corporation. Consummation of this Agreement shall be effected on the date on which a Certificate of Merger * * * is filed in the office of the Department of State of the State of Colorado * * * (c) The Laws which are to govern the Surviving Corporation are the laws of the State of Colorado.
Schader dealt with both respondent and the Partnership's limited partners in his capacity as president of the corporate general partner, the Partnership's TMP. When the IRS sent correspondence to Schader, such matter was always sent to Schader in his capacity as president of the corporate general partner, the TMP of the Partnership, and not as an individual. Schader signed the Partnership's tax returns for 1983 and 1984 as president of GPI, the Partnership's general partner and TMP. GPI filed a final tax return for 1985 with a wrapover for 6 days in 1986. Shortly after the merger took place, Schader sent a letter to the Partnership's limited partners informing them that GPI *8 merged into PLI. In addition, Schader sent letters to all the limited partners on at least two other occasions during 1986. Schader did not receive a response from any of the limited partners regarding the merger. In May 1986, Schader executed Form 2848, Power of Attorney, in his capacity as president of the Partnership's corporate general partner, the TMP, appointing Mr. Mark Carson, a certified public accountant, to represent the Partnership before respondent. Only two individuals had the authority to execute a written agreement to extend the period of limitations on assessment on behalf of the Partnership for 1983 and 1984. These were Schader, who was president of the TMP, and Cynthia L. Schader (Schader's then spouse), who was secretary of the TMP. Schader executed separate Forms 872-0 on January 5, 1987, for taxable year 1983, and on August 17, 1987, for taxable year 1984. On January 12, 1987, Robert M. Gil, a group manager for the IRS, countersigned, on behalf of the Government, the written agreement to extend the period of limitations on assessment, Form 872-0, for the Partnership's 1983 taxable year. On September 25, 1987, Ann Smith, an acting group manager for the *9 IRS, countersigned, on behalf of the Government, the Form 872-0 for the Partnership's 1984 taxable year. The Partnership never filed a Form 872-N, Notice of Termination of Special Consent to Extend the Time to Assess Tax Attributable to Partnership Items. The FPAA made adjustments for 1983, but not for 1984. Petitioner agrees that the adjustments set forth in the FPAA are correct. Petitioner, however, contends that the FPAA was mailed after the period of limitations on assessment had expired because the consent executed by Schader was not effective to extend the normal 3-year period of limitations on assessment. Discussion
The bar of the statute of limitations is an affirmative defense, and the party raising it must specifically plead it and carry the burden of proof with respect thereto. Pursuant to this defense, petitioner must make a prima facie case respecting the time of filing of the tax return, the expiration of the applicable statutory period, and the mailing of the FPAA after the running of such statutory period. Miami Purchasing Service v. Commissioner, 76 T.C. 818, 823 (1981); Robinson v. Commissioner, 57 T.C. 735, 737 (1972). *10 The burden of going forward with the evidence then shifts to respondent who must introduce evidence that the bar of the statute of limitations is not applicable. If respondent adduces sufficient proof to that effect, the burden of going forward with the evidence then shifts back to petitioner to show that the exception relied upon by respondent is invalid. The burden of proof never shifts, but remains upon the party that pleads the bar of the statute of limitations. Adler v. Commissioner, 85 T.C. 535, 540 (1985); see also Pleasanton Gravel Co. v. Commissioner, 85 T.C. 839, 854 (1985); American Educare v. Commissioner, T.C. Memo. 1990-159, affd. without published opinion sub nom. Saloon v. Commissioner, 956 F.2d 275 (9th Cir. 1992). In general, the period for assessing any tax attributable to any partnership item is 3 years following the date the partnership files its information return for the year in question, or 3 years following the last day for filing such return, whichever period expires later. Sec. 6229(a). At any time prior to its expiration, the *11 period of limitations may be extended with respect to any partner by a written agreement entered into between the Secretary and such partner, or "with respect to all partners, by an agreement entered into by the Secretary and the tax matters partner (or any other person authorized by the partnership in writing to enter into such an agreement)". Sec. 6229(b). The Partnership filed its 1983 partnership return on April 15, 1984, the last day for filing the return. Therefore, for the FPAA to be valid, respondent must have, by April 15, 1987, either issued the FPAA or obtained a valid extension by written agreement. Respondent did not issue the FPAA by April 15, 1987. Prior to April 15, 1987, however, respondent did obtain a written extension by agreement (Form 872-0), signed by Schader. For this extension by agreement to be valid with respect to all partners, the written agreement must be entered into between respondent and either the TMP or any other person authorized by the partnership in writing to enter into such an agreement. Therefore, we must examine whether Schader was acting on behalf of the TMP or was otherwise authorized in writing to enter into such an agreement. The *12 term "tax matters partner" is defined by a series of rules set out in section 6231(a)(7). Under the first of these rules, the TMP is the general partner designated as such by the partnership. Sec. 6231(a)(7)(A). Only a general partner may be designated TMP. Sec. 6231(a)(7)(A); sec. 301.6231(a)(7)-1T(b), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6791 (Mar. 5, 1987). The designation of a partner as the TMP must be made on the tax return or by filing a statement with respondent. Sec. 301.6231(a)(7)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6791 (Mar. 5, 1987). The Partnership's 1983 Federal partnership return did not designate a TMP, nor did the Partnership file with respondent any statement designating the TMP. Thus, the Partnership has not designated a TMP. The Partnership, however, as a TEFRA partnership, is not required to specifically designate a TMP. Where no TMP designation is made, section 6231(a)(7)(B) specifies that the TMP shall be the general partner with the greatest profits interest at the close of the taxable year. Sec. 301.6231(a)(7)-1T(m), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6792 *13 (Mar. 5, 1987). Here, the Partnership had only one general partner -- GPI. Accordingly, GPI was the Partnership's TMP for 1983 and 1984. In January 1986, GPI merged into PLI. Schader was the president of GPI and PLI. A corporate officer has the authority to bind a corporation by executing a written agreement to extend the period of limitations on assessment, such as Form 872. See Philip Carey Manufacturing Co. v. Dean, 58 F.2d 737 (6th Cir. 1932); Liberty Baking Co. v. Heiner, 37 F.2d 703 (3d Cir. 1930). Schader dealt with respondent as the representative of GPI, the Partnership's TMP and sole general partner. Schader executed the Partnership's partnership returns for 1983 and 1984. After the merger of GPI into PLI, Schader continued to deal with respondent regarding the Partnership's tax returns for 1983 and 1984. Schader (1) executed written agreements to extend the period of limitations on assessment, Form 872-0; (2) executed a power of attorney to permit Mr. Mark Carson, a certified public accountant, to represent the Partnership; (3) corresponded with respondent regarding the audit of the Partnership; and *14 (4) kept the Partnership's limited partners informed about the tax audit. Under section 6229(b)(1)(B), a consent may be executed not only by the TMP, but also by any other person authorized by the partnership in writing. Cambridge Research & Dev. Group v. Commissioner, 97 T.C. 287 (1991). In that case, we held that the partnership agreement along with State law constituted authorization for the general partner, who was not the TMP, to extend the period of limitations on assessment. We noted that the agreement authorized general partners to take any action or do anything in furtherance of partnership business. Moreover, we found that extending the period of limitations for partnership items for all partners fell within the scope of partnership business. Noting that the partnership agreement did not restrict a general partner's authority under State law, we sustained the extension signed by a general partner who was not the TMP. In the present case, the Limited Partnership Agreement specifically authorizes the general partner (on behalf of the Partnership) to make such tax elections and determinations as appear to be appropriate, and grants the *15 general partner exclusive management and control of the business of the Partnership. Such authorization is not otherwise restricted under Colorado State law. Colo. Rev. Stat. sec. 7-62-403(1) (1986). Colorado's Uniform Partnership Law provides that every general partner is an agent of the partnership for the purposes of its business, and that every act of every partner binds the partnership, unless the partner is acting without authority and the person with whom he is dealing has such knowledge. Colo. Rev. Stat. sec. 7-60-109(1) (1986). Petitioner has not provided us with persuasive evidence that, in January 1987, when the consent was signed and countersigned, respondent knew, or had reason to know, that GPI had been merged into PLI, or that Schader for any reason lacked authority to bind the Partnership. Thus, we find that, at the time the consent was signed and countersigned, respondent did not have such knowledge, nor did respondent have reason to have such knowledge. Consequently, we hold that Schader had the power to act on behalf of and bind the Partnership in executing Form 872-0 to extend the period of limitations on assessment for all partners. Petitioner argues that *16 the written agreement to extend the period of limitations on assessment, Form 872-0, was ineffective since it was signed by Schader without any identifying designation of his representative capacity. The written agreement has 2 signature lines for the Partnership: TAX MATTERS PARTNER SIGNATURE HERE /s/Robert Schader AUTHORIZED REPRESENTATIVE SIGN HERE    The failure to identify Schader's representative capacity on the signature line does not invalidate the agreement. Pleasanton Gravel Co. v. Commissioner, 85 T.C. 839, 854-855 (1985); Eversole v. Commissioner, 46 T.C. 56, 61 (1966). In Pleasanton Gravel Co. v. Commissioner, we held that the failure to include the name of the taxpayer corporation next to the signature of the corporate president was only a clerical error; it did not invalidate the waiver. In Eversole v. Commissioner, we held that a waiver addressed to "Estate of John T. Eversole, Deceased and Mrs. Ina Eversole, surviving wife" and signed "Estate of John T. Eversole, Deceased, and Mrs. Ina G. Eversole, Surviving Wife" by "Ina Eversole" was valid, not only to Ina individually, but also as *17 to the estate. We rejected the taxpayers' argument that the waiver was invalid as to the estate because Ina did not indicate that she was signing in a representative capacity, as well as on her own behalf. In the present case, the written agreement to extend the period of limitations on assessment was not an agreement between Schader, individually, in his capacity as a limited partner, and respondent. Rather, the agreement clearly states that it is an agreement between respondent and the Partnership. The agreement further states that it applies to "the amount of any Federal income tax with respect to any person or any partnership items for the above named partnership". The signature line clearly requires the signature of the TMP. Schader signed on that line. Respondent accepted and countersigned the agreement without knowing or having reason to know of any lack of authority on Schader's part to act in that capacity. Therefore, we hold that, under Colorado law and the Partnership agreement, Schader had the power to act on behalf of and bind the Partnership in executing Form 872-0 to extend the period of limitations on assessment for all partners. Hence, the period of limitations *18 on assessment had not expired by the time the Commissioner issued and mailed the FPAA to the Partnership. Because petitioner agrees that the adjustments set forth in the FPAA are correct, to reflect the foregoing, Decision will be entered for respondent.