MEDICAL & BUSINESS FACILITIES, LTD., GERALD STEVENS, TAX MATTERS PARTNER, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Medical & Business Facilities v. Commissioner
Docket Nos. 4729-92, 4730-92, 4731-92, 4732-92
United States Tax Court
T.C. Memo 1994-38; 1994 Tax Ct. Memo LEXIS 42; 67 T.C.M. (CCH) 2068; January 31, 1994, Filed *42 For petitioners: Albert J. Derbes, IV. For respondent: Kathleen O. Lier. WELLS
WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: On December 26, 1991, respondent sent notices of final partnership administrative adjustment (FPAA's) for taxable years 1983, 1984, and 1985 to Gerald Stevens and for taxable year 1986 to Philip S. Brooks, as tax matters partners (TMP's) for Medical & Business Facilities, Ltd.[2] *43 These consolidated cases (hereinafter referred to as the instant case) are before the Court pursuant to petitioners' petitions under section 6226[3] for readjustment of the partnership items set forth in the FPAA's. After concessions by petitioners, we must decide whether Philip S. Brooks had authority to execute consents on behalf of Medical & Business Facilities, Ltd., to extend the period of limitations for the assessment of tax for taxable years 1983, 1984, and 1985. FINDINGS OF FACT Some of the facts have been stipulated for trial pursuant to Rule 91. The stipulated facts are incorporated in our findings of fact by reference. Medical & Business Facilities, Ltd. (MBFL), is a Louisiana partnership in commendam [4] or limited partnership whose principal place of business, at the time of the filing of the petitions in the instant case, was Metairie, Louisiana. During 1980, MBFL purchased the Sara Mayo Hospital and renamed it New Orleans General Hospital. New Orleans General Hospital Corp., a nonprofit corporation, leased its hospital facilities from MBFL. MBFL also owned certain properties surrounding the New Orleans General Hospital which it planned to develop for commercial uses. During 1984, New Orleans General Hospital Corp. filed for protection under the Federal bankruptcy laws. *44 MBFL timely filed Federal partnership returns, Forms 1065, for taxable years 1983, 1985, and 1986 on April 15, 1984, April 15, 1986, and April 15, 1987, respectively. MBFL filed an amended Federal partnership return for taxable year 1984 on June 21, 1985. Gerald Stevens (Mr. Stevens) signed MBFL's Federal partnership return for taxable year 1983, and Philip S. Brooks (Mr. Brooks) signed MBFL's Federal partnership returns for all other taxable years in issue. None of the Federal partnership returns, Forms 1065, for the taxable years in issue contained a section that allowed the partnership to designate a TMP. MBFL did not designate a TMP on any of its Federal partnership returns until the taxable year 1987. Respondent mailed notices of beginning of administrative proceedings (NBAP's) to MBFL and to each of MBFL's partners for taxable year 1983 on April 8, 1986. On September 9, 1987, respondent mailed NBAP's to MBFL and to each of MBFL's partners for taxable years 1984 and 1985. On July 25, 1989, respondent mailed NBAP's for taxable year 1986 to MBFL and to each of MBFL's partners. Internal Revenue Agent Joette Pfeiffer was assigned to audit MBFL's books for the taxable years *45 in issue. 1. Amendments to the Partnership Agreement
Prior to the mailing of the NBAP's for the taxable years in issue, MBFL's partnership agreement was twice amended. MBFL was formed during March 1980 by Mr. Stevens and James J. Wyllie, Jr., as a Louisiana general partnership. The original partnership agreement was filed with the secretary of state of Louisiana on March 10, 1980. During 1981, the partnership was expanded to add new general partners and a new class of limited partners. On April 21, 1981, MBFL filed and recorded with the secretary of state of Louisiana an "Amendment to the Articles of Partnership" (the first amendment to the partnership agreement) which formally registered MBFL as a partnership in commendam or limited partnership in the State of Louisiana. The first amended partnership agreement was drafted by Mr. Brooks and included the following provisions: ARTICLE I PARTNERSHIP
* * * Section 1.08 Purpose. The purpose of the business of the Partnership is to acquire, hold, improve, lease, operate, finance and refinance real estate or rights in real estate and other properties and to engage in all general business activities not prohibited *46 by law.
ARTICLE II MANAGEMENT
Section 2.01 Management of the Partnership. The overall management and control of the business and affairs of the Partnership shall be vested in the managing general partner and the management committee consisting of the managing general partner and the General Partners, all of whom will be collectively referred to as "The Management". The Management will act collectively on all decisions with respect to the management and control of the Partnership and their actions shall be binding on the Partnership and all Partners provided that they act within the scope of their authority as granted by these partnership articles. * * * Decisions shall be made by the Management by a simple majority vote. * * * To implement any and all decisions and action, the managing general partner shall execute all appropriate documents and take any actions to carry out the decisions of the Management. When the phrases "approved by the Partners" or "approval by the Partners" is used in the agreement, such phrases shall mean approval by a simple majority vote of the General Partners. * * * Section 2.03 Managing General Partner. The managing general partner *47 shall be Gerald L. Stevens and the members of the Managing Committee shall be the General Partners herein above named.
* * * ARTICLE V DIVISION OF PROFITS AND LOSSES
* * * Section 5.02 Tax Status and Reporting. * * * b. The managing general partner shall prepare or cause to be prepared all tax returns and statements, which must be timely filed on behalf of the Partnership with any taxing and/or governmental authority.
ARTICLE VII TRANSFER OR CLAIMS, BORROWING, LEASE, OR MORTGAGE
No General Partner shall, without the approval of the Management on behalf of the Partnership: a. Assign, transfer, pledge, compromise, or release any of its claims or debts, except upon payment in full, or arbitrate or consent to the arbitration of any of its disputes or controversy; b. Borrow money in the Partnership name or use collateral owned by the Partnership as security for loans except as provided in Article II, Section 2.01 hereof; c. Lease or mortgage any Partnership real estate or interest therein or enter into any contract for such purposes.
The first amendment to the partnership agreement lists the names of all the general and limited partners and their *48 respective ownership interests in the partnership. Mr. Stevens, in addition to his position as managing general partner, also owned the largest single profits interest in MBFL during the taxable years in issue. During 1981, Mr. Brooks became a general partner in MBFL, but his name was not listed among the names of the general and limited partners found in the first amendment to the partnership agreement. On September 23, 1982, Mr. Stevens moved to Los Angeles, California. On November 4, 1982, Mr. Brooks was appointed assistant managing general partner to Mr. Stevens for the purpose of carrying on the partnership's business activities. Mr. Brooks remained assistant managing general partner until his resignation on June 25, 1983. After his resignation, Mr. Brooks remained a member of the management committee. As assistant managing general partner, Mr. Brooks presided over partnership meetings held between November 4, 1982, and June 25, 1983. Mr. Brooks, as well as several other partners of MBFL, had authority to sign checks on the accounts of MBFL, and Mr. Brooks did in fact sign a large number of checks on behalf of MBFL during all the taxable years in issue. During June 1983, *49 Mr. Stevens resigned as managing general partner of MBFL, and Mr. Brooks also resigned as assistant managing general partner to Mr. Stevens on June 25, 1983. During June 1983, Al Derbes, III (Mr. Derbes), was hired as partnership manager for MBFL. Mr. Derbes is a board certified Louisiana tax attorney as well as a certified public accountant. Mr. Derbes prepared MBFL's Federal tax returns for taxable years 1985 and 1986. After MBFL ceased operations in 1987, Mr. Derbes continued to act as the partnership manager and attorney for MBFL. During 1983, MBFL admitted additional general and limited partners, and consequently, the partnership agreement was amended during 1983 (the second amendment to the partnership agreement) to reflect such changes. The second amendment to the partnership agreement was also drafted by Mr. Brooks and made the following changes in the management structure of MBFL: ARTICLE II MANAGEMENT
Section 2.01 Management of the Partnership. The overall management and control of the business and affairs of the Partnership shall be vested in the management committee comprised of five (5) General Partners serving one (1) year terms. The management committee *50 will act collectively on all decisions with respect to the management and control of the Partnership and its actions shall be binding on the Partnership and all Partners provided that they act within the scope of their authority as granted by these partnership articles. * * * * * * Decisions shall be made by the Management Committee by a simple majority of all five members, or a minimum of three members. * * * To implement any and all decisions and action, the management committee shall execute all appropriate documents and take any action to carry out the decision of the Management. When the phrases "approved by the Partners" or "approval by the Partners" is used in the agreement, such phrases shall mean approval by the management committee. Section 2.03 Managing General Partner. There shall be no managing general partner, but management of the Partnership shall be governed by a management committee, which shall have the authority to employ the services of an individual to act as the Manager of the Partnership.
* * * ARTICLE V DIVISION OF PROFITS AND LOSSES
Section 5.02 Tax Status and Reporting. b. The Managing Committee shall prepare or cause to be prepared *51 all tax returns and statements, which must be timely filed on behalf of the Partnership with any taxing and/or governmental authority.
* * * ARTICLE X GENERAL
Section 10.12 Power of Attorney. Each General and Limited Partner, by execution of this Agreement, irrevocably constitutes and appoints the management committee, his or her true and lawful agent and attorney-in-fact with full power and authority in his or her name, place and stead to execute, acknowledge, deliver, swear to, file and record at the appropriate public offices such documents, instruments or conveyances that may be necessary or appropriate to carry out the provisions or purposes of this Agreement, including without limitation: (i) all instruments (including counterparts of this Agreement); * * * The appointment by all Partners of the management committee as agent and attorney-in-fact shall be deemed irrevocable and to be a power coupled with an interest, in recognition of the fact that each of the Partners under this Agreement will be relying upon the power of the management committee to act as contemplated by this Agreement in any filing and other action by it on behalf of the Partnership, * * *52 *
The second amendment to the partnership agreement was not signed by all of the partners, but it was, nevertheless, filed with the secretary of state of Louisiana on January 28, 1986. On June 25, 1983, at a full meeting of the partnership, Mr. Brooks was elected, along with four other general partners, to the management committee. On September 29, 1984, during a full partnership meeting, the management committee was expanded from five to seven members. Mr. Brooks, along with the four other general partners who were already serving on the management committee, was reelected to the management committee. On June 25, 1985, during a full meeting of the partnership, one member of the management committee resigned, but no replacement was ever elected. According to the record, the last formal meeting of the management committee occurred on April 2, 1985. The minutes of the management committee meetings contain no record of any discussions concerning Mr. Brooks' decision to extend the period of limitations for the assessment of tax for the taxable years in issue. 2. The Consents To Extend the Period of Limitations
On May 6, 1985, Agent Pfeiffer contacted Al Aucoin, the *53 accountant who prepared MBFL's Federal partnership return for taxable year 1983, in order to identify MBFL's TMP. Mr. Aucoin, after initially believing himself to be MBFL's TMP, informed Agent Pfeiffer that Mr. Derbes was handling MBFL's financial affairs. On that same day Agent Pfeiffer contacted someone in Mr. Derbes' office who told Agent Pfeiffer that an attempt would be made to identify which partner was acting as MBFL's TMP. In a subsequent phone call, a person from Mr. Derbes' office identified Mr. Brooks as MBFL's TMP. On May 7, 1985, Agent Pfeiffer spoke with Mr. Brooks and requested that he furnish her with a copy of MBFL's 1983 Federal partnership return, Form 1065, and copies of each partner's Schedule K-1 for taxable year 1983. On April 8, 1986, Agent Pfeiffer met with Mr. Derbes and Mr. Brooks at Mr. Derbes' office. At the meeting, Mr. Brooks and Mr. Derbes presented Agent Pfeiffer with a Form 2848, Power of Attorney and Declaration of Representative, which authorized Mr. Derbes to represent MBFL before the Internal Revenue Service (IRS) with respect to MBFL's Federal partnership returns for taxable years 1982, 1983, and 1984. The Form 2848 was prepared by Mr. *54 Derbes and executed by Mr. Brooks as a general partner of MBFL on April 8, 1986. During the same meeting, Agent Pfeiffer requested that a Form 872-P, Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership (hereinafter Form 872-P or consent to extend the period of limitations), for taxable year 1983 be executed by MBFL's TMP. Mr. Brooks indicated that he was not sure if he could execute the Form 872-P because he did not know which partner was going to act as MBFL's TMP. Agent Pfeiffer advised Mr. Brooks and Mr. Derbes that, if the partnership did not designate a TMP, then the IRS would designate a TMP for the partnership. At that time, Mr. Brooks and Mr. Derbes stated they would attempt to identify the general partner who was to act as TMP on behalf of MBFL. Prior to meeting with Mr. Brooks and Mr. Derbes, Agent Pfeiffer was brought to a conference room where she was allowed to inspect MBFL's books and records, including, but not limited to, the original partnership agreement and all subsequent amendments to the partnership agreement. Agent Pfeiffer's case activity record indicates that she "read" the partnership agreement and the amendments thereto. *55 At some point during Agent Pfeiffer's visit to Mr. Derbes' office on April 8, 1986, she was presented with a Form 872-P which extended the period of limitations for taxable year 1983 until December 31, 1987. The Form 872-P had been executed by Mr. Brooks in her absence. Both Mr. Brooks and Mr. Derbes believed that Mr. Brooks, as a general partner of MBFL, had the authority to bind the partnership when he executed the Form 872-P on April 8, 1986. Including the initial Form 872-P, Mr. Brooks and respondent executed the following Forms 872-P for MBFL's taxable year 1983: Date Consent Executed by
Extending the date for
Philip S. Brooks
Respondent
Making Assessment to --
04/08/86
04/09/86
12/31/87
08/25/87
09/09/87
12/31/88
10/19/88
11/08/88
4/15/90
06/29/89
06/30/89
4/15/91
01/21/91
02/05/91
12/31/91
With the exception of the Form 872-P executed by Mr. Brooks on January 21, 1991, each of the Forms 872-P listed above was signed by Mr. Brooks on the line designated for the signature of the partnership's TMP. The Form 872-P executed by Mr. Brooks on January 21, 1991, was signed by Mr. Brooks on the line designated "Authorized Representative". [5]
*56 On September 9, 1987, respondent issued two new NBAP's to MBFL informing MBFL and its partners that respondent was commencing an examination of MBFL for taxable years 1984 and 1985. Mr. Brooks and respondent timely executed the following consents to extend the period of limitations, Forms 872-P, for the partnership's taxable year 1984: Date Consent Executed by
Extending the Date for
Philip S. Brooks
Respondent
Making Assessment to --
08/25/87
09/09/87
12/31/88
10/19/88
11/08/88
4/15/90
06/29/89
06/30/89
4/15/91
01/21/91
02/05/91
12/31/91
With the exception of the Form 872-P executed by Mr. Brooks on January 21, 1991, each of the Forms 872-P listed above was signed by Mr. Brooks on the line designated for the signature of the partnership's TMP. The Form 872-P executed by Mr. Brooks on January 21, 1991, was signed by Mr. Brooks on the line designated "Authorized Representative". [6]
Mr. Brooks and respondent *57 timely executed the following consents to extend the period of limitations, Forms 872-P, for the partnership's taxable year 1985: Date Consent Executed by
Extending the Date for
Philip S. Brooks
Respondent
Making Assessment to --
10/19/88
11/08/88
4/15/90
06/30/89
07/06/89
4/15/91
01/21/91
02/05/91
12/31/91
With the exception of the Form 872-P executed by Mr. Brooks on January 21, 1991, each of the Forms 872-P listed above was signed by Mr. Brooks on the line designated for the signature of the partnership's TMP. The Form 872-P executed by Mr. Brooks on January 21, 1991, was signed by Mr. Brooks on the line designated "Authorized Representative". [7]
Mr. Brooks and respondent timely executed the following consents to extend the period of limitations, Forms 872-P, for the partnership's taxable year 1986: Date Consent Executed by
Extending the Date for
Philip S. Brooks
Respondent
Making Assessment to --
07/20/89
07/21/89
5/15/91
01/21/91
02/05/91
12/31/91
*58 The Form 872-P executed by Mr. Brooks on July 20, 1991, was signed by Mr. Brooks on the line designated for the signature of the partnership's TMP. The Form 872-P executed by Mr. Brooks on January 21, 1991, was signed by Mr. Brooks on the line designated "Authorized Representative". [8] The parties have stipulated that the period for assessment for MBFL's taxable year 1986 has not expired. In addition to the Forms 872-P, Mr. Brooks executed the following Forms 2848, Power of Attorney and Declaration of Representative, on behalf of MBFL: Taxable Years
Title Listed
Listed on Form 2848
Date Form 2848 Executed on Form 2848
1982, 1983, 1984
April 8, 1986
General Partner 1985
August 25, 1987
Partner 1986
June 29, 1989
Partner 1983, 1984, 1985, 1986
June 29, 1989
Tax Matters Partner On June 27, 1989, Agent Pfeiffer, at the instruction of her group manager, telephoned Mr. Derbes and requested that he secure *59 from MBFL a written document formally designating a TMP for MBFL's taxable year 1986. On June 30, 1989, Mr. Derbes sent letters to Mr. Stevens, Mr. Brooks, James J. Wyllie, Jr., Roland Falgout, and Fritz Windhorst (the general partners whose combined profits interests in MBFL exceeded 50 percent of the total combined profits interests in MBFL) requesting that they formally designate Mr. Brooks as TMP for MBFL "for all open years including without limitation the tax year ended December 31, 1986." The letters sent by Mr. Derbes on June 30, 1989, to each of the partners named above stated the following: For your information, Phil Brooks has been acting as the tax matters partner, but because of the 1986 tax act and the changes thereunder, the IRS requires that we have a formal designation of that by a majority in interest of the general partners.
By a letter dated July 14, 1989, Mr. Derbes sent to Agent Pfeiffer copies of the letters signed by the above-named partners designating Mr. Brooks as TMP. On July 12, 1989, Ms. Kelley Lanier, a Reviewer on the Quality Assurance Staff of the IRS, informed Agent Pfeiffer that the Forms 872-P executed by Mr. Brooks for taxable years *60 1983, 1984, and 1985 might not be valid. Ms. Lanier requested an opinion from New Orleans District Counsel on the issue of whether the Forms 872-P for taxable years 1983, 1984, and 1985 had been properly executed by Mr. Brooks. The New Orleans District Counsel's office prepared a memorandum, dated July 28, 1989, which concluded that Mr. Brooks had not been properly designated as the TMP for MBFL for taxable years 1983, 1984, and 1985 in accordance with the temporary regulations issued by the IRS on March 5, 1987. Respondent issued 60-day letters for taxable years 1983, 1984, 1985, and 1986, on October 16, 1989, March 20, 1990 (for taxable years 1984 and 1985), and July 2, 1990, respectively. MBFL filed three separate protests on November 16, 1990 (for taxable year 1983), May 15, 1990 (for taxable years 1984 and 1985), and July 25, 1990 (for taxable year 1986). Mr. Brooks executed each of these protests as TMP for MBFL. By letter dated June 28, 1991, Mr. Derbes filed a Freedom of Information Act (FOIA) request with respondent for information held by respondent with respect to MBFL's taxable years 1983, 1984, 1985, and 1986. In response to Mr. Derbes' FOIA request, respondent *61 sent Mr. Derbes a copy of the New Orleans District Counsel's memorandum, dated July 28, 1989, which concluded that Mr. Brooks had not been properly designated as MBFL's TMP. By letter dated August 15, 1991, MBFL filed a protest with respondent claiming that the period of limitations with respect to MBFL's taxable years 1983, 1984, and 1985 had expired because Mr. Brooks had not been properly designated as TMP for MBFL for such years, and therefore, lacked the authority to execute Forms 872-P on behalf of MBFL. The protest was signed by Mr. Brooks as TMP for MBFL. When Internal Revenue Agent Joseph Gamberdell requested that MBFL execute additional Forms 872-P extending the period for assessment of tax for the taxable years in issue, MBFL declined to do so because Mr. Brooks and Mr. Derbes believed the period of limitations for the taxable years in issue had already expired. OPINION We must decide whether the period of limitations has expired for the taxable years in issue. The general rule limiting the period during which a tax may be assessed provides that any assessment must be made within 3 years after the later of the due date or the filing date of the return. Sec. 6501(a) *62 and (b); Centennial Sav. Bank FSB v. United States, 887 F.2d 595, 598 (5th Cir. 1989), affd. in part, revd. in part on another issue and remanded 499 U.S. 573 (1981); Mecom v. Commissioner, 101 T.C.    ,     (1993) (slip op. at 12). A taxpayer may consent in writing to an additional period during which assessment may be made if the taxpayer and the Commissioner agree to the extension within the 3-year period provided by section 6501(a) and (b). Sec. 6501(c)(4); Centennial Sav. Bank FSB v. United States, supra at 598. The general rule of section 6501(a), however, does not apply to income attributable to partnership items of partnerships subject to the unified audit and litigation procedures under sections 6221 through 6233 originally enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 324, 648. Sec. 6501(o)(2). The period for assessing any income tax attributable to partnership items (or affected items) for a partnership taxable year generally ends 3 years after the later of (1) the date the partnership files *63 its information return or (2) the due date of the partnership return. Sec. 6229(a); Cambridge Research & Dev. Group v. Commissioner, 97 T.C. 287, 292 (1991). The period for assessing income tax attributable to partnership items (or affected items) may be extended by agreement at any time before the expiration of the 3-year period. Sec. 6229(b)(1); [9]Cambridge Research & Dev. Group v. Commissioner, supra.A partner, in the partner's individual capacity, may enter an extension agreement with the Commissioner. Sec. 6229(b)(1)(A). The period of limitations on assessment may be extended with respect to all partners by an agreement entered into by the Commissioner and either the "tax matters partner" or "any other person authorized by the partnership in writing to enter into such agreement". Sec. 6229(b)(1)(B). *64 The expiration of the period of limitations is an affirmative defense, which must be pleaded and proved. Rules 142(a), 39. Once it is established that the statutory notice, or in the instant case, the FPAA, was issued beyond the general 3-year period of limitations, the burden of going forward shifts to the Commissioner to show that an exception to the period of limitations applies. J.H. Rutter Rex Manufacturing Co. v. Commissioner, 853 F.2d 1275, 1281 (5th Cir. 1988), affg. in part and revg. in part T.C. Memo. 1987-296; Armes v. Commissioner, 448 F.2d 972, 974 (5th Cir. 1971), affg. in part, revg. in part and remanding T.C. Memo. 1969-181; Adler v. Commissioner, 85 T.C. 535, 540-541 (1985). If the Commissioner relies on the existence of a written consent to extend the period of limitations, then, upon introduction into evidence of a consent which is valid on its face, the burden of going forward shifts back to the taxpayer to prove that the exception relied on by the Commissioner is invalid or inapplicable. J.H. Rutter Rex Manufacturing Co. v. Commissioner, supra at 1281; *65 Adler v. Commissioner, supra at 540-541. A consent is valid on its face if it includes the name of the taxpayer, the signature of the taxpayer or a person authorized to sign on the taxpayer's behalf, and the taxable year as to which the period is to be extended, and was signed on a date prior to the expiration of the limitations period. Doneff v. Commissioner, T.C. Memo. 1991-253 (citing Lefebvre v. Commissioner, T.C. Memo. 1984-202, affd. 758 F.2d 1340 (9th Cir. 1985)). In the instant case, petitioners have shown that the FPAA's for taxable years 1983, 1984, and 1985 were issued after the expiration of the 3-year period of limitations, not considering extensions, and respondent has introduced facially valid consents to extend the period of limitations for such taxable years. Thus, petitioners bear the burden of proving that such consents are invalid. Both parties agree that Mr. Brooks, the general partner of MBFL who executed the consents, Forms 872-P, was not MBFL's TMP for taxable years 1983, 1984, and 1985 because he did not meet the definition of that *66 term as set forth in section 6231(a)(7)(A). [10] Both parties also agree Mr. Brooks was never designated as MBFL's TMP for taxable years 1983, 1984, and 1985 in accordance with section 301.6231(a)(7)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6779 (Mar. 5, 1987). Mr. Brooks, however, was properly designated as MBFL's TMP in accordance with section 301.6231(a)(7)-1T, Temporary Proced. & Admin. Regs., supra, for taxable year 1986. Mr. Brooks was never formally designated as MBFL's TMP by the IRS. Moreover, the parties have stipulated that Mr. Stevens held the largest profits interest in MBFL during the taxable years in issue. *67 Petitioners assert that because Mr. Brooks was not authorized by MBFL to extend the period of limitations with respect to all the partners of MBFL by a writing which satisfies section 6229(b)(1)(B), the period of limitations for taxable years 1983, 1984, and 1985 has expired. Respondent, relying on our holding in Cambridge Research & Dev. Group v. Commissioner, 97 T.C. 287 (1991), contends that the consents executed by Mr. Brooks are binding upon all of the partners of MBFL because MBFL's partnership agreement and Louisiana law satisfy the requirement of section 6229(b)(1)(B) that authorization to extend the period of limitations for all the partners of the partnership must be manifested in writing. In Cambridge Research & Dev. Group v. Commissioner, supra, we considered the circumstances in which a partner, who was not the TMP and who had not been authorized by the partnership to extend the period of limitations according to section 301.6229(b)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6789 (Mar. 5, 1987), [11] could extend the period of limitations within the meaning of section *68 6229(b)(1)(B). In Cambridge Research & Dev. Group, we held that a general grant of authority contained in the partnership agreement constitutes the written authorization required by section 6229(b)(1)(B) that would allow a general partner, who is considered an agent of the partnership under State law, to extend the period of limitations with respect to all partners. Cambridge Research & Dev. Group v. Commissioner, supra at 296-302; Georgetown Petroleum-Edith Forrest v. Commissioner, T.C. Memo. 1994-13; Iowa Investors Baker v. Commissioner, T.C. Memo. 1992-490. In Cambridge Research & Dev. Group, we also held that the partners (rather than the partnership), through the partnership agreement, could delegate authority to extend the period of limitations for purposes of section 6229(b)(1)(B). Cambridge Research & Dev. Group v. Commissioner, supra at 301. Thus, a general partner's agency authority to carry out the business activities of the partnership, flowing from the partnership entity as a matter of State law and from the partners under the *69 partnership agreement, is sufficient to satisfy the requirement of section 6229(b)(1)(B) which allows a person other than the TMP to extend the period of limitations on behalf of the partnership if "authorized by the partnership in writing". Finally, we held that the signing of the consent, Form 872-P, on the line designated for the signature of the TMP by a general partner who was not the TMP, rather than on the line designated for the signature of the authorized representative, did not invalidate the consent. Id. at 302. *70 1. Mr. Brooks' Authority UnderLouisiana Law
In the instant case, in order to decide whether Mr. Brooks was authorized by the partnership, as required by section 6229(b)(1)(B), to extend the period of limitations on behalf of the partnership, we must analyze the scope of Mr. Brooks' authority as a general partner of MBFL under Louisiana law. [12] According to Louisiana law, a partner, when dealing with third parties, is a mandatary, or agent, of the partnership, and may bind the partnership by his or her actions. Article 2814 of the Louisiana Civil Code, in pertinent part, provides: A partner is a mandatory of the partnership for all matters in the ordinary course of its business other than the alienation, lease, or encumbrance of its immovables. A provision that a partner is not a mandatary does not affect third persons who in good faith transact business with the partner. * * * [La. Civ. Code Ann. art. 2814 (West Supp. 1993). [13]]  A mandatary under Louisiana law is generally an agent who acts for, or in place of, another by authority from him. See La. Civ. Code Ann. art. 2895 (West 1952). Civil Code article 2814 was amended in 1981, 1981 La. Acts 888, in order *71 to bring Louisiana law into conformity with that of the 48 States which have adopted the Uniform Partnership Act (hereinafter UPA). See Note, "Louisiana's New Partnership Provisions: A Review of the Changes and Some Continuing Problem Areas", 42 La. L. Rev. 1429, 1431 (1982). Under the UPA, a partner may bind the partnership in the case where a partner has either actual or apparent authority. The concept of apparent authority is not expressly provided for in the Civil Code, but has been expressly adopted in Louisiana case law. See Krautkramer Ultrasonics, Inc. v. Port Allen Marine Serv., Inc., 248 So. 2d 336 (La. Ct. App. 1971). In Krautkramer, the court stated: The doctrine of apparent authority requires that the principal make manifestations to a third party in some form, and that the third party reasonably rely on the agent's purported authority as a result of the manifestations of the principal. [Id. at 336.]
The effect of Civil Code article 2814 is to empower every general partner of a Louisiana partnership with the authority to bind the partnership when dealing with a *72 third party in all transactions (other than those transactions involving the alienation, lease, or encumbrance of the partnership immovables), where a partner makes a manifestation of his authority to bind the partnership and the third party relies, in good faith, on the partner's purported authority. In the instant case, Mr. Brooks acted as, and believed himself to be, MBFL's TMP when he signed the consents to extend the period of limitations for the taxable years in issue. Mr. Brooks testified *73 that he believed he could bind the partnership based upon his authority as a general partner of MBFL. Mr. Brooks, who drafted the amendments to MBFL's partnership agreement and acted as an attorney for MBFL, was in a position to determine the scope of his authority under both Louisiana law and MBFL's partnership agreement. Mr. Brooks was assisted by Mr. Derbes, who is a Louisiana board certified tax attorney and a certified public accountant. Mr. Derbes also testified that he believed that Mr. Brooks, as a general partner, had authority to bind MBFL when he executed the Forms 872-P on behalf of MBFL. As stated above, Civil Code article 2814 was designed to bring Louisiana law into conformity with the UPA's concept of mutual agency. In three cases involving partnerships formed in States which had adopted the UPA, we held that a general partner's execution of a consent to extend the period of limitations on behalf of the partnership was an action taken in the ordinary course of business. See Cambridge Research & Dev. Group v. Commissioner, 97 T.C. at 297; Georgetown Petroleum-Edith Forrest v. Commissioner, T.C. Memo. 1994-13; *74 Iowa Investors Baker v. Commissioner, T.C. Memo. 1992-490. Because no Louisiana case law specifically addresses the issue of whether a general partner's decision to extend the period of assessment is an action taken in the ordinary course of business, we must decide that question as if we were sitting as the highest court of the State. Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967). We believe that the Supreme Court of Louisiana would hold that a general partner's decision to extend the period of limitations on behalf of the partnership is within the ordinary course of the partnership's business. The Louisiana Civil Code specifically states that the prescription period for the assessment of State taxes is suspended, with respect to income taxes, "for any period by means of a written agreement entered into between a taxpayer and the United States Internal Revenue Service suspending the prescription of federal income tax." La. Rev. Stat. Ann. sec. 1580B(2) (West 1990). Such provision supports our conclusion that a decision by a taxpayer to execute a consent to extend the period of limitations with the IRS *75 is not an act which is outside the scope of ordinary business activities. Petitioners contend that MBFL should not be bound by Mr. Brooks' actions because Agent Pfeiffer knew or had reason to know that Mr. Brooks did not have the authority to extend the period of limitations on behalf of MBFL on April 8, 1986. [14] When Mr. Brooks and Mr. Derbes met with Agent Pfeiffer on April 8, 1986, Mr. Brooks informed Agent Pfeiffer that he was not sure whether he could sign the Form 872-P because he was not sure whether he was the TMP. Petitioners also point to the fact that Agent Pfeiffer had the opportunity to read the partnership agreement, and the amendments thereto, and should have been aware that the partnership agreement did not contain a provision granting the general partners the authority to extend the period of limitations on behalf of the partnership. In short, petitioners contend that Agent Pfeiffer had reason to know that Mr. Brooks did not have authority to extend the period of limitations on behalf of the partnership. We disagree. We base our conclusion on several considerations. *76 The first consideration is the fact that the partnership agreement did not clearly restrict a general partner's authority to extend the period of limitations on behalf of the partnership. There is no provision in the partnership agreement, or the amendments thereto, which states that a general partner is not a mandatary of the partnership. The second consideration is that both Mr. Brooks and Mr. Derbes acted in a manner that would lead any reasonable person to believe that Mr. Brooks had the requisite authority to extend the period of limitations on behalf of MBFL. Prior to leaving MBFL's office on April 8, 1986, Agent Pfeiffer was given a Form 872-P signed by Mr. Brooks on the line designated for the signature of MBFL's TMP. Earlier that day, Mr. Brooks and Mr. Derbes told Agent Pfeiffer that they would find out which partner was going to act as MBFL's TMP. [15] We note that Mr. Brooks signed all the other Forms 872-P, with the exception of the Forms 872-P that he signed on January 21, 1991, on the line designated for the signature of the partnership's TMP. The Forms 872-P executed by Mr. Brooks on January 21, 1991, were signed on the line designated for the signature of the *77 partnership's authorized representative, but we think that this was most likely due to the fact that Mr. Brooks' name was typed on the line that was designated for the signature of the partnership's TMP. Third, Mr. Brooks, Mr. Derbes, and Agent Pfeiffer testified that they believed Mr. Brooks, as a general partner of MBFL, had the authority to bind the partnership when Mr. Brooks signed the consents. We note that Mr. Brooks and Mr. Derbes are both lawyers and have extensive experience in Federal taxation and Louisiana partnership law. Finally, Agent Pfeiffer testified that, when the audit of MBFL began during 1986, she was aware that Mr. Stevens was living in California. Under such circumstances, we do not think it was unreasonable for Agent Pfeiffer to have believed that Mr. Brooks had been designated as MBFL's TMP. *78 Consequently, we find that Agent Pfeiffer acted in good faith and had a reasonable basis for believing Mr. Brooks had the authority to extend the period of limitations on behalf of MBFL. Accordingly, we hold that, under Louisiana law, Mr. Brooks had authority to bind the partnership pursuant to section 6229(b)(1)(B) when he executed the consents to extend the period of limitations on behalf of MBFL. 2. Mr. Brooks' Authority under the Partnership Agreement
As stated above, in Cambridge Research & Dev. Group v. Commissioner, 97 T.C. 287 (1991), we held that a general grant of the authority contained in the partnership agreement is sufficient written authorization for a general partner, who is considered an agent of the partnership under State law, to extend the period of limitations for purposes of section 6229(b)(1)(B). Petitioners contend that the consents in issue are invalid because Mr. Brooks exceeded his authority under the partnership agreement. In support of the their contention, petitioners point to the fact that (1) the partnership agreement, and its amendments, did not specifically grant Mr. Brooks or any other general partner the *79 authority to execute consents to extend the period of limitations on behalf of the partnership; (2) the management committee never authorized Mr. Brooks to act as the TMP on behalf of MBFL for taxable years 1983, 1984, and 1985; and (3) the management committee did not authorize Mr. Brooks in writing, within the meaning of section 6229(b)(1)(B), to extend the period of limitations on behalf of MBFL for the taxable years in issue. As we read MBFL's partnership agreement, as amended, the partnership agreement restricted a general partner's authority to bind the partnership, without the approval of the management committee, only with respect to specific transactions. The transactions requiring the approval of the management committee are contained in Article VII of the first amendment to the partnership agreement (Article VII). [16] None of the transactions listed in Article VII restrict a general partner's authority to execute consents to extend the period of limitations on behalf of the partnership. *80 In the absence of a provision to the contrary, a general partner of a Louisiana partnership is considered to have all of the powers granted general partners under Louisiana law. La. Civ. Code Ann. art. 2807 (West Supp. 1993). Article VII was necessary to limit the general partners' authority to enter into specific types of transactions on behalf of the partnership. If petitioners are correct in their assertion that the management committee had the exclusive authority to act on behalf of the partnership, then Article VII's restrictions on the authority of the general partners would have been superfluous. As we read MBFL's partnership agreement, its management structure is consistent with Mr. Brooks' conduct throughout the IRS audit process. Mr. Brooks drafted both amendments to the partnership agreement and certainly was in a position to know the scope of his authority under the partnership agreement. Accordingly, we believe that when Mr. Brooks drafted the amendments to the partnership agreement, he contemplated a management scheme in which the general partners of MBFL possessed broad authority to conduct business on behalf of the partnership. Consequently, the general partners *81 were vested with the authority to bind the partnership without the approval of the management committee in transactions (except for the transactions listed in Article VII) entered into in the ordinary course of business. The record contains ample evidence supporting our conclusion that Mr. Brooks had authority under the partnership agreement to extend the period of limitations on behalf of MBFL: (1) The record does not show that the general partners alleged in any way that Mr. Brooks had exceeded his authority under the partnership agreement when Mr. Derbes informed them that Mr. Brooks had been acting as MBFL's TMP for prior taxable years and requested that they formally appoint Mr. Brooks as MBFL's TMP for taxable year 1986 and all open years; (2) only one of the general partners of MBFL who testified during the trial alleged that Mr. Brooks had exceeded his authority under the partnership agreement -- that partner, a member of the management committee, however, made no such allegation at the time he was informed by Mr. Derbes' letter that Mr. Brooks had been acting as MBFL's TMP for the taxable years prior to 1986; (3) Mr. Brooks and Mr. Derbes believed that Mr. Brooks' execution *82 of the consents to extend the period of limitations on behalf of MBFL was a routine action taken in the ordinary course of MBFL's business, and therefore, they never felt compelled to raise the issue during a meeting of the management committee or a full meeting of MBFL; and (4) Mr. Brooks drafted both amendments to the partnership agreement, and therefore, he was in a position to know the scope of his authority under both the partnership agreement and Louisiana law. In short, Mr. Brooks' conduct is consistent with our interpretation of the authority accorded general partners under MBFL's partnership agreement. Petitioners contend that the second amendment to the partnership agreement gave the management committee the exclusive authority to manage MBFL. The second amendment to the partnership agreement, however, did not alter the provisions of Article VII and did not contain any additional limitations on the powers of the general partners to act on behalf of MBFL. Consequently, the transactions listed in Article VII are the only transactions which require the approval of the management committee. In other words, any transaction which is not listed in Article VII and which is *83 entered into by a general partner on behalf of MBFL in the ordinary course of business does not require the approval of the management committee. Because Article VII does not limit the power of a general partner to extend the period of limitations on behalf of the partnership, Mr. Brooks did not need written authorization by the management committee to execute consents to extend the period of limitations on behalf of the partnership. Petitioners also contend that section 10.12 of Article X of the second amendment to the partnership agreement (section 10.12) is evidence that a general partner's authority to extend the period of limitations on behalf of MBFL requires the explicit approval of the management committee. Petitioners contend that section 10.12 made the management committee the attorney in fact for all of MBFL's partners, both general and limited, and gave the management committee the exclusive right to act on behalf of MBFL. Consequently, petitioners claim Mr. Brooks, who was never authorized by the management committee to extend the period of limitations on behalf of MBFL, lacked the authority to bind MBFL when he executed the consents to extend the period of limitations *84 for the taxable years in issue. We, however, read section 10.12 as granting the management committee the exclusive power to act as an agent and attorney in fact on behalf of MBFL only with respect to those transactions which required the approval of the management committee. As stated above, authorization by the management committee was needed only with respect to those transactions outlined in Article VII. Nothing in section 10.12 limits another general partner from acting as agent or attorney in fact for MBFL with regard to those transactions not listed in Article VII. We note that Mr. Brooks also signed several Forms 2848, Power of Attorney and Declaration of Representatives, appointing Mr. Derbes as the authorized representative of MBFL. If petitioners' interpretation of section 10.12 is correct, then the Forms 2848 executed by Mr. Brooks would also be invalid. All of the partners testified that they knew Mr. Derbes was representing MBFL before the IRS, but there is nothing in the record which suggests that the management committee formally designated Mr. Derbes as MBFL's representative before the IRS. In short, we believe Mr. Brooks' actions are consistent with our reading *85 of section 10.12, namely, that the management committee was appointed as the agent and attorney in fact of all the partners only with respect to those transactions which specifically required the approval of the management committee. Petitioners also contend that section 5.02 of Article V of the second amendment to the partnership agreement (section 5.02), which requires the management committee to prepare and file "all tax returns and statements, which must be timely filed on behalf of the partnership", restricted Mr. Brooks' authority to execute consents to extend the period of limitations on behalf of MBFL. The decision to execute a Form 872-P, Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, is a voluntary decision to be made by the taxpayer and the IRS, and therefore, is not "a return or statement that must be timely filed on behalf of a partnership". Because a Form 872-P is not required to be filed on behalf of MBFL, the management committee does not possess the exclusive authority to execute a Form 872-P on behalf of MBFL. Moreover, under Louisiana law, a partner "who has no authority to act for the partnership due to a stipulation in the *86 partnership agreement" may bind the partnership, if the party with whom the partner transacts business relies in good faith on the partner's manifestation of his or her authority to bind the partnership. See La. Civ. Code Ann. art. 2814 (West Supp. 1993). As stated above, we find that Agent Pfeiffer had no reason to believe that Mr. Brooks lacked the authority, under the partnership agreement, to extend the period of limitations. Consequently, even if we had found that Mr. Brooks lacked the requisite authority to extend the period of limitations under section 5.02 of the partnership agreement, MBFL would still be bound by the terms of the Forms 872-P under Louisiana law. In conclusion, we hold that both Louisiana law and MBFL's partnership agreement provide Mr. Brooks with the written authorization that is required by section 6229(b)(1)(B) to extend the period of limitations on behalf of MBFL for taxable years 1983, 1984, and 1985. Accordingly, the Forms 872-P executed by Mr. Brooks for taxable years 1983, 1984, and 1985 are valid and the period of limitations for such taxable years has not expired. To reflect the foregoing, Decisions will be entered for respondent. Footnotes
1. Cases of the following petitioners are consolidated herewith: Medical & Business Facilities, Ltd., Gerald Stevens, Tax Matters Partner, docket No. 4730-92; Medical & Business Facilities, Ltd., Gerald Stevens, Tax Matters Partner, docket No. 4731-92; Medical & Business Facilities, Ltd., Philip S. Brooks, Tax Matters Partner, docket No. 4732-92.↩
2. Docket No. 4729-92 relates to the taxable year ended Dec. 31, 1983. Docket No. 4730-92 relates to the taxable year ended Dec. 31, 1984. Docket No. 4731-92 relates to the taxable year ended Dec. 31, 1985. Docket No. 4732-92 relates to the taxable year ended Dec. 31, 1986.↩
3. Unless otherwise indicated, all section references are to the Internal Revenue Code for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
4. Louisiana law defines a partnership in commendam as the following: A partnership in commendam consists of one or more general partners who have the powers, rights, and obligations of partners, and one or more partners in commendam, or limited partners, whose powers, rights, and obligations are defined in this Chapter.
La. Civ. Code Ann. art. 2837↩ (West Supp. 1993).
5. Mr. Brooks' name was typed on the line designated for the signature of MBFL's TMP.↩
6. Mr. Brooks' name was typed on the line designated for the signature of MBFL's TMP.↩
7. Mr. Brooks' name was typed on the line designated for the signature of MBFL's TMP.↩
8. Mr. Brooks' name was typed on the line designated for the signature of MBFL's TMP.↩
9. SEC. 6229. PERIOD OF LIMITATIONS FOR MAKING ASSESSMENTS. (b) Extension by Agreement. -- (1) In General. -- The period described in subsection (a) (including an extension period under this subsection) may be extended -- (A) with respect to any partner, by an agreement entered into by the Secretary and such partner, and (B) with respect to all partners, by an agreement entered into by the Secretary and the tax matters partner (or any other person authorized by the partnership in writing to enter into such an agreement),↩
before the expiration of such period.
10. Sec. 6231(a)(7)(A) defines the TMP as the general partner designated according to the Treasury regulations. If none is designated, sec. 6231(a)(7)(B) provides that the TMP is the general partner with the "largest profits interest" in the partnership at the close of the tax year or, if no one partner has the largest profits interest, then the partner whose name appears first alphabetically. If there is no designation, and it is impracticable to apply the other rules, the Secretary is to select a TMP. Sec. 6231(a)(7)↩.
11. Compliance with the procedures specified in sec. 301.6229(b)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6789 (Mar. 5, 1987), is permissive and not mandatory, and therefore, noncompliance with those procedures will not invalidate authority to extend the period of limitations. Cambridge Research & Dev. Group v. Commissioner, 97 T.C. 287, 295 (1991); Iowa Investors Baker v. Commissioner, T.C. Memo. 1992-490↩.
12. MBFL was a partnership in commendam for all taxable years in issue. Under Louisiana law, the general partners of a partnership in commendam have the same powers, rights, and obligations as the partners in a general partnership. La. Civ. Code Ann. art. 2837↩ (West Supp. 1993).
13. A partner in commendam who conducts any business with third parties on behalf of the partnership becomes liable in the same manner as general partner for the obligations of the partnership. La. Civ. Code Ann. art. 2844↩ (West Supp. 1993).
14. Petitioner relies on a Revision Comment to article 2814 which, in pertinent part, states: A partner who has no authority to act for the partnership due to a stipulation in the partnership agreement can bind the partnership if the third person with whom he deals neither knows nor has reason to know of the partner's lack of authority to bind the partnership. [La. Civ. Code Ann. art. 2814↩, Revision Comment (a) (West Supp. 1993).]
15. While Agent Pfeiffer's case activity record indicates that she "read" the partnership agreement, Agent Pfeiffer testified that she only spent 10 to 15 minutes "scanning" the partnership agreement. We take such testimony to mean that Agent Pfeiffer undertook only a hasty review of the partnership agreement. Indeed, Agent Pfeiffer testified that her main reason for reading the partnership agreement was to obtain information on when the partnership was formed and how the profits and losses were allocated among the partners. She apparently did not read it for the purpose of deciding whether Mr. Brooks had the requisite authority to bind the partnership on the Form 872-P. We note that the partnership agreement and its amendments are over 60 pages in length. In addition, the second amendment↩ to the partnership agreement was not signed by all of MBFL's partners, and therefore, it would have been reasonable to doubt whether the amendment was legally binding on MBFL and its partners. Consequently, assuming that, under MBFL's partnership agreement, Mr. Brooks lacked the authority to consent to extend the period of limitations on behalf of MBFL, we find that Agent Pfeiffer would have had no reason to know that Mr. Brooks lacked such authority on the basis of her cursory examination of MBFL's partnership agreement and the amendments thereto.
16. The second amendment to the partnership agreement did not alter Article VII of the first amendment to the partnership agreement and did not contain any additional limitations on the powers of the general partners to act on behalf of the partnership. As a result, Article VII of the first amendment↩ to partnership is still controlling.