INVESTMENT ENGINEERS, LTD., ROBERT S. MCGLAMERY, A PARTNER OTHER THAN THE TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Investment Eng'rs v. Commissioner
Docket No. 9300-92
United States Tax Court
T.C. Memo 1994-255; 1994 Tax Ct. Memo LEXIS 254; 67 T.C.M. (CCH) 3055; June 6, 1994, Filed *254 Robert S. McGlamery, pro se. Robert L. Montelius, Jr., participating partner, pro se. For respondent: Sherri L. Munnerlyn. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: This case involves an adjustment of partnership items on partnership returns for 1982, 1983, and 1984. The only issue now before us is whether the statute of limitations bars assessments attributable to the partnership items. If petitioner prevails on this issue, petitioner will be entitled to a judgment on the merits in this case. If respondent prevails on this issue, the adjustments will be reviewed in further proceedings before the Court. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. The partnership's principal place of business was in the State of California at the time the petition was filed. A Limited Partnership Agreement (the Partnership Agreement) was entered into as of December 14, 1982, between *255 Timothy J. Curtis (Curtis), as general partner, and Debra-Lee Jensen, as limited partner. The Partnership Agreement created Investment Engineers, Ltd., a limited partnership (Investment Engineers or the Partnership), under the Uniform Limited Partnership Act of California, Cal. Corp. Code sec. 15527 (West 1991) (the former statute). The stated purpose of the Partnership was to engage in the business of research and experimentation for the development of computer software in the field of financial planning. The Partnership Agreement provided that additional limited partners could be added pursuant to the terms of the Partnership Agreement. A person would become a limited partner in the Partnership when such person had: (1) Purchased three or more "partnership units" (as defined in the Partnership Agreement); (2) contributed $ 5,000 in cash and/or notes for each partnership unit; (3) executed and filed with the Partnership a written instrument setting forth an intention to become a limited partner and requesting admission to the Partnership in that capacity; (4) executed other instruments deemed necessary by the general partner; and (5) obtained the consent of the general partner *256 to the admission of such partner. The Partnership Agreement further provided for the filing of a Certificate of Limited Partnership and of amended certificates as required by California State law. Article Seven of the Partnership Agreement, entitled "Duties and Rights of Partners", provided: The General Partner shall devote to the business of the Partnership such time as required to effectively carry out the business purpose of the Partnership. No Limited Partner shall have any right to be active in the conduct of the Partnership's business, or have power to bind the Partnership in any contract, agreement, promise or undertaking.
Gregory A. Knox (Knox) was the promoter of the Partnership. Knox had a juris doctor degree, but was not admitted to any bar, and made his living as a financial planner. On December 15, 1982, Curtis executed a special power of attorney appointing Knox to perform certain acts with respect to the formation of the Partnership, to file certificates of limited partnership and amendments thereto, and to accept additional limited partners or purchases of additional Partnership interests. A Certificate of Limited Partnership was recorded in the Los Angeles *257 County Recorder's Office for the Partnership on or around December 16, 1982. The certificate named Curtis as the general partner and Debra-Lee Jensen as the only limited partner. This was the only document recorded by the Partnership in any county recorder's office in California. During the years in issue, Knox opened a bank account for the Partnership that he operated and controlled and over which he maintained signature authority. Knox entered into research and development contracts with the Partnership, owned notes that were originally executed by the partners in favor of the Partnership and then assigned to him, and generally remained involved with the Partnership through 1993. Robert L. Montelius, Jr. (Montelius), became a partner in the Partnership in December 1982. A document entitled "Amendment to Certificate of Limited Partnership of Investment Engineers, Ltd.", which indicated that limited partners, including Montelius, were being added to the Partnership, was executed on December 30, 1983. This document was not recorded in any county recorder's office in California or with the secretary of state of California. Over 20 limited partners purchased units in Investment *258 Engineers between December 1982 and June 1985. These included Montelius, Ralph and Carolyn Colburn (the Colburns), Mark Happach (Happach), Donald Knox, Ronald Riley (Riley), Leroy Bera (Bera), Robert S. McGlamery (petitioner or McGlamery) and Lorraine McGlamery, Ronald Else (Else), Leonard G. Jensen, Claire and Bonnie Ostrand, and Jeffrey Wooldridge (Wooldridge). No documents were recorded or filed in any county recorder's office in California or with the secretary of state of California reflecting the addition of these limited partners. Knox prepared a Certificate of Limited Partnership on a "Form LP-1" that named Curtis as the general partner of the Partnership and was filed with the secretary of state of California on July 2, 1984. This was the only document recorded by the Partnership with the secretary of state of California. Prior to July 1984, Curtis had decided that he no longer desired to be a general partner. Knox advised Curtis of steps he could take to convert his interest to that of a limited partner and Montelius' interest to that of a general partner. Knox advised Curtis that the Partnership was covered by the California Revised Limited Partnership Act, Cal. *259 Corp. Code sec. 15721 (West 1991) (the revised statute) and that, under the revised statute, only Curtis' permission was necessary to make Montelius a general partner. Written or other consent from the limited partners was never sought or obtained to elect to be covered by the revised statute instead of by the former statute under which the Partnership was formed. No votes of limited partners were ever requested or offered to admit Montelius as an additional general partner of the Partnership until 1993. On July 13, 1984, Curtis executed a witnessed document purporting to admit Montelius as an additional general partner. The document stated: I, Timothy J. Curtis, the undersigned, as General Partner of Investment Engineers, Ltd., hereby admit as an additional general partner, Robert L. Montelius, Jr., upon consideration of his purchasing seven (7) Partnership Units, which units are in addition to any he may hold as a limited partner. * * *
By executing this document, Curtis intended to grant all of the powers and responsibilities of a general partner to Montelius. Montelius purchased seven partnership units on July 13, 1984. Curtis believed that he had followed Knox's *260 advice and that, after July 1984, Curtis was no longer a general partner in the Partnership but that Montelius was the general partner of the Partnership. Montelius believed that in July 1984 he became a general partner of the Partnership, and he acted in that capacity from 1984 to 1993. Curtis and Montelius relied on Knox to have effected the change in general partners. Knox led Curtis to believe that Curtis was no longer the general partner by not involving him in any Partnership activities and by sending him Schedules K-1 (Form 1065) that listed Curtis as a limited partner. However, Knox continued to act under the power of attorney granted to him by Curtis through 1985. During May through October 1984, Montelius, acting as a general partner, assigned notes received from partners to Knox as consideration for a research agreement entered into on July 9, 1984, between Knox and the Partnership. Subsequent to July 1984, Montelius, acting as a general partner, signed documents purportedly transferring interests in the Partnership to himself, to John and Jeanne Robison, and to Bera. On March 15, 1985, Montelius, acting as a general partner, executed a Power of Attorney and Declaration *261 of Representative, appointing Knox as attorney in fact to represent the Partnership before any office of the Internal Revenue Service (IRS) for 1982, 1983, and 1984. The Partnership filed its 1982, 1983, and 1984 tax returns on April 15 of the respective years in which they were due. Knox prepared all of the Partnership Federal returns during the years in issue. Curtis signed and was named as general partner on the Partnership's 1982 and 1983 returns. Montelius signed on the line for the general partner and submitted to the IRS Partnership returns for 1984 through 1991. The Schedules K-1 that were attached to the returns for 1984 through 1991 indicated that Montelius was the sole general partner and that Curtis was a limited partner. On the returns for 1987 through 1989, Montelius was listed as tax matters partner (TMP). On October 9, 1985, IRS Agent Matthew Claus (Claus) spoke to Curtis concerning an audit of the Partnership. Curtis informed Claus that Curtis was no longer a general partner and that the new general partner was Montelius. On October 9, 1985, Claus mailed a letter to Montelius to arrange a meeting with him. On October 14, 1985, Montelius wrote a letter to *262 Claus in response and signed it as general partner of the Partnership. A Form 872-0, Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership (a consent), with respect to the Partnership's 1982 year was signed by Montelius on November 15, 1985, and by an IRS representative on November 29, 1985. A consent for the Partnership's 1983 year was signed by Montelius on July 7, 1986, and by an IRS representative on July 25, 1986. A consent for the Partnership's 1984 year was signed by Montelius on August 24, 1987, and by an IRS representative on September 16, 1987. Montelius consulted with Knox before signing the consents. Knox advised Montelius to sign such consents, and Knox was aware that Montelius had actually done so. Montelius believed himself to be the general partner and TMP of the Partnership when he signed the consents for 1982 through 1984, and, as such, he intended to extend the periods of limitations on assessment of the partnership items. In early 1987, Montelius was introduced at a Partnership meeting as the general partner and managing partner of the Partnership. The meeting was attended by Montelius, the Colburns, Happach, Donald Knox, *263 Riley, and Bera. Knox mailed a videotape of the meeting to the partners who did not attend. McGlamery, Else, and Claire Ostrand knew Montelius was acting as a general partner. Wooldridge and Grant Jensen knew Montelius was involved with the Partnership other than in the capacity of a passive investor. In January 1988, Montelius submitted to the IRS a Protest, purportedly on behalf of all of the partners in the Partnership, appealing the findings of the Examiner to the Appeals Office of the IRS. In this document, Montelius stated "I am the tax matters partner" and signed under penalties of perjury. In May 1990, Montelius submitted a letter to the IRS that stated "Investment Engineers, Ltd. * * * hereby designates Robert L. Montelius, Jr., * * * tax matters partner for partnership taxable years 1982 and 1983." The letter was signed by "Robert L. Montelius, Jr." as general partner. On December 3, 1991, respondent sent a notice of final partnership administrative adjustment (FPAA), pertaining to 1982 through 1984, addressed to "Robert L. Montelius" as "Tax Matters Partner". Also on December 3, 1991, respondent sent three respective FPAA's, pertaining to 1982, 1983, and 1984, addressed *264 to the "Tax Matters Partner" of Investment Engineers. On May 4, 1992, a petition was filed in this case by McGlamery. The petition did not name a TMP, and, on May 6, 1992, the Court issued an Order directing petitioner to file a Notice of Identification of Tax Matters Partner. On June 10, 1992, petitioner filed a document indicating that Montelius was the TMP. On October 26, 1992, the Court granted Montelius leave to file a Notice of Election to Intervene in the case as TMP. Also on October 26, 1992, petitioner requested that the IRS Sacramento Appeals Office transfer the case to an Appeals officer in Southern California in order for the TMP to handle the case. Montelius indicated that he was the TMP of the Partnership in a January 11, 1993, letter to the IRS District Counsel's office. In a February 22, 1993, letter to the District Counsel's office, Montelius indicated that he was a general partner. Montelius held himself out to the IRS to be a general partner and TMP of the Partnership during the audit and until March 1993. No partner approached Montelius during the relevant time period to object to his actions in acting as a general partner or TMP, with the exception of *265 Else, who, in 1993, approached Montelius to object to Montelius' prior acts purporting to extend the periods of limitations. OPINION Petitioner argues that the periods of limitations in this case expired before respondent sent the FPAA's with respect to 1982, 1983, and 1984. Respondent argues that the periods of limitations were extended by the execution of valid consents. In deciding this issue, we note the Supreme Court's admonishment that "Statutes of limitation sought to be applied to bar rights of the Government must receive a strict construction in favor of the Government." Badaracco v. Commissioner, 464 U.S. 386, 391 (1984) (quoting E.I. Dupont de Nemours & Co. v. Davis, 264 U.S. 456, 462 (1924)); see also Bufferd v. Commissioner, 506 U.S.    , 113 S. Ct. 927, 930 n.6 (1993). The periods of limitations in this case are governed by section 6229. The period for assessing any income tax attributable to any partnership item (or affected item) for a partnership taxable year does not expire before the date that is 3 years after the later of (1) the date on which the partnership *266 return for such taxable year was filed or (2) the last day for filing such return for such year (determined without regard to extensions). Sec. 6229(a). The 3-year period may be extended, before the expiration of such period, with respect to any partner, by an agreement entered into by the Secretary and such partner, and with respect to all partners, by an agreement entered into by the Secretary and the TMP or "any other person authorized by the partnership in writing to enter into such agreement". Sec. 6229(b)(1)(B). Section 301.6229(b)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6789 (Mar. 5, 1987), provides that a partnership "may authorize any person to extend the period described in section 6229(a) with respect to all partners by filing a statement to that effect with the service center with which the partnership return is filed." The Partnership did not expressly authorize anyone to extend the periods of limitations as prescribed by the temporary regulation. However, two of the consents in this case were signed before the promulgation of the regulation, and the regulation cannot invalidate authority to extend the period of assessment granted *267 prior to promulgation of such regulation. Cambridge-Research & Dev. Group v. Commissioner, 97 T.C. 287, 295 (1991). Further, we have held that "the use of the verbal auxiliary 'may,' rather than 'shall,' in the first sentence of section 301.6229(b)-1T, Temporary Proced. & Admin. Regs., * * * establishes that the procedures specified in the regulation are permissive and not mandatory." Id. Thus, the Partnership may use another method to authorize a person to extend such period. In this case, consents were executed before the expiration of the periods of limitations that purported to extend, for an indefinite period, the periods for assessment of tax attributable to partnership items for 1982, 1983, and 1984. FPAA's were sent by respondent to the "Tax Matters Partner" on December 3, 1991. Montelius' authority to execute the consents, and thus the validity of the consents themselves, determines whether the statute of limitations bars assessment of tax in this case. The burden of proof in establishing that the periods of limitations have expired rests with petitioner. As we said in Amesbury Apartments, Ltd. v. Commissioner, 95 T.C. 227, 240-241 (1990): *268 The expiration of the period of limitation on assessment is an affirmative defense, and the party raising it must specifically plead it and carry the burden of proving its applicability. Rules 39, 142(a). To establish this defense, the taxpayer must make a prima facie case establishing the filing of the partnership return, the expiration of the statutory period, and receipt or mailing of the notice after the running of the period. Miami Purchasing Service Corp. v. Commissioner, 76 T.C. 818, 823 (1981); Robinson v. Commissioner, 57 T.C. 735, 737 (1972). Where the party pleading the defense makes such a showing, the burden of going forward with the evidence shifts to respondent who must then introduce evidence to show that the bar of the statute is not applicable. Adler v. Commissioner, 85 T.C. 535, 540 (1985). Where respondent makes such a showing, the burden of going forward then shifts back to the party pleading the affirmative defense to show that the alleged exception to the expiration of the period is invalid or otherwise inapplicable. Adler v. Commissioner, supra at 540. *269 The burden of proof, i.e., the burden of ultimate persuasion, however, never shifts from the party who pleads the bar of the statute of limitations. Adler v. Commissioner, supra at 540.
Here, the FPAA's were sent more than 3 years after the timely filing of the Partnership returns. Thus, the burden of going forward shifted to respondent to show an exception to the normal 3-year period for assessment. Respondent came forward with consents that were signed by Montelius as to each tax year in issue. The record indicates that both Curtis and Montelius represented that Montelius was the proper person to sign the consents and to deal with the Partnership's tax issues. The consent forms appear on their faces to extend the periods of assessment indefinitely. Thus, the burden shifts back to petitioner to prove that the consents were not valid in order for the bar of the statute of limitations to apply to the assessment of taxes for 1982, 1983, and 1984. See Iowa Investors Baker v. Commissioner, T.C. Memo. 1992-490. Respondent argues that the consents were valid with respect to all of the partners in the Partnership, *270 because Montelius had authority under section 6229(b)(1)(B), the California partnership statutes, and the Partnership Agreement, either as a general partner or as an agent of the Partnership, to enter into such consents. Respondent argues alternatively that, even if Montelius was not authorized to extend the periods on behalf of all of the partners, he was authorized to extend the periods for assessing his own taxes pursuant to section 6229(b)(1)(A). Petitioner asserts that the consents were not valid with respect to the Partnership or with respect to Montelius himself because Montelius was a limited partner and was not authorized to sign the consents. Respondent presents three alternative arguments that Montelius was authorized to sign the consents for the Partnership: (1) The Partnership was a general partnership, and, therefore, Montelius was a general partner authorized to sign the consents; (2) the Partnership was a limited partnership, but Montelius was a general partner authorized to sign the consents because of his own actions and the actions of Curtis and the other partners; or (3) Montelius had written authorization to sign the consents. Because we agree with the third *271 argument, we do not address the others. Respondent asserts that, through the purported admission of Montelius as general partner of the Partnership, Curtis authorized Montelius to enter into the consents as an agent of the Partnership. Petitioner concedes: Judicial doctrines developed under Cambridge Research and Development Group v. Commissioner, 97 T.C. 287 (1991) would have allowed general partner Timothy Curtis to successfully execute the extension forms. In the Investment Engineers partnership agreement, there was a general grant of authority to the general partner to perform such a task, and Timothy Curtis was given powers of attorneys of individual partners as well.
Curtis had the authority to execute the consents and, thus, the authority to delegate the power to execute the consents. Sec. 6231(a)(7). Montelius acted as general partner beginning in July 1984. Curtis withdrew from managing Partnership affairs, informed the revenue agent that Curtis was no longer general partner, and directed the agent to contact Montelius. It is evident that the intent of Curtis and Montelius was to shift to Montelius very broad authority with respect *272 to Partnership matters, which undoubtedly included executing the consents. It appears that many of the other partners agreed to this arrangement as well. Many of the partners were aware that Montelius was acting as the general partner and managing partner through attendance at the meeting in early 1987 or through the tape of the meeting containing an introduction to Montelius as general and managing partner. Although the limited partners did not vote or sign any documents relating to the admission of Montelius as general partner in 1984, Happach, McGlamery, Else, and Claire Ostrand knew that Montelius was acting as a general partner, and Wooldridge and Grant Jensen knew that Montelius was involved with the Partnership other than in the capacity of a passive investor. Only one of the partners objected to Montelius' actions and that was not until 1993 -- long after the expiration of the normal periods of limitations. Under Cambridge Research & Dev. Group v. Commissioner, 97 T.C. 287 (1991), the writing referred to in section 6229(b), used to authorize a person to extend the period of limitations, may be a writing to the designated person, through *273 a general partner acting as an agent of the partnership, or a writing of the partnership giving an agent the authority to execute the extension. Further, under the relevant temporary regulation, the written authorization need only be signed by the general partners. Sec. 301.6229(b)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6789 (Mar. 5, 1987). Respondent characterizes the document whereby Curtis purported to admit Montelius as general partner as a writing from the Partnership through its general partner agent, Curtis, impliedly giving the authority to execute the consents to Montelius as executing agent. We must decide whether this document memorialized in writing the intended grant of authority from Curtis to Montelius such that Montelius was authorized to sign the consents as required by section 6229(b)(1)(B). We stated in Cambridge Research & Dev. Group v. Commissioner, supra, that nothing in section 6229(b) suggests a requirement that the necessary writing authorizing a person other than the TMP to extend the period for assessment is limited to one specifically referring to a consent agreement under section *274 6229(b)(1)(B). Id. at 300-301. In Amesbury Apartments, Ltd. v. Commissioner, 95 T.C. 227 (1990), a partnership's general partner, who was not the partnership's TMP, authorized a certified public accountant (C.P.A.) to execute a consent extending the period of limitations by granting to the C.P.A. a Power of Attorney and Declaration of Representation (Form 2848), which provided as follows: The attorney(s)-in-fact (or either of them) are authorized, subject to revocation, to receive confidential information and to perform any and all acts that the principal(s) can perform with respect to the above specified tax matters (excluding the power to receive refund checks, and the power to sign the return * * * unless specifically granted below). [Id. at 242.]
The Court held that a consent executed by the C.P.A. was valid, because the taxpayer had not proven that the execution of the consent by the C.P.A. was invalid or that the partnership did not intend to authorize the C.P.A. to execute consents on behalf of the partnership. Id. at 243. Curtis' written *275 authorization granting to Montelius all of the powers of a general partner was broader than the power of attorney granted in Amesbury Apartments Ltd., which the Court found to satisfy the requirements of section 6229(b)(1)(B). Petitioner concedes that the powers of a general partner in the Partnership included the power to execute a valid consent. Regardless of whether the written agreement changed Montelius' status to that of general partner, it authorized Montelius to assume the powers and responsibilities of a general partner. Subsequent to the agreement, Curtis acted as a limited partner and Montelius acted as a general partner, and they represented themselves as such on the Partnership returns. Further, Curtis told the IRS to deal with Montelius, and he did not grant this authority to anyone else, including Knox, whose powers under the power of attorney were limited. Petitioner has not proven that the execution of the consent by Montelius was invalid or that Curtis, as the general partner agent of the Partnership, did not intend to authorize Montelius to execute consents on behalf of the Partnership. Thus, we are persuaded that Curtis succeeded in granting to Montelius *276 the power to execute the consents. Accordingly, we hold that, under the Partnership Agreement, California law, and the explicit grant of authority from Curtis, Montelius had the written authority to sign the consents, as required by section 6229(b), and that the statute of limitations is not a bar in this case. An appropriate Order will be issued.