IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-40453
_____


MEDICAL & BUSINESS FACILITIES,
LTD., GERALD STEVENS, TAX MATTERS
PARTNER,

                                        Petitioner-Appellant,

                    versus

COMMISSIONER OF INTERNAL REVENUE,

                                        Respondent-Appellee.



_____

No. 94-40527
_____


MEDICAL & BUSINESS FACILITIES,
LTD., PHILLIP S. BROOKS,
TAX MATTER PARTNER,

                                        Petitioner-Appellee,

                    versus

COMMISSIONER OF INTERNAL REVENUE,

                                        Respondent-Appellant.

_____

Appeals from the United States Tax Court
_____
(July 25, 1995)

Before REYNALDO G. GARZA, HIGGINBOTHAM, and PARKER, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A general partner of Medical & Business Facilities, Ltd. signed consent forms for tax years 1983 through 1986, agreeing to extend the period of limitations during which the Internal Revenue

Service could assess a deficiency.  MBFL is now arguing that the general partner was not authorized to execute the consents and the IRS's assessment is time barred.  We agree and reverse the Tax Court's finding in favor of the Commissioner.

I.

Medical & Business Facilities, Ltd. was a partnership engaged in the business of buying medical assets and leasing those assets to medical enterprises.  The partnership was initially formed by Gerald Stevens and James Wyllie in 1980 as a general partnership.  In 1981, additional partners were admitted and an amendment to the partnership agreement was filed with the State of Louisiana, registering the partnership as a partnership in commendam.  A partnership in commendam is similar to a common law limited partnership.  See La. Civ. Code Ann. art. 2837 (West 1994).

The amended partnership agreement vested management and control of the business in a managing general partner and a management committee that was made up of the firm's general partners.  The managing general partner and the management committee were to act collectively on all decisions with respect to the management and control of the business, and their actions were binding on the partnership and all of the partners.  Gerald Stevens was the managing general partner and owned the largest single profit interest in MBFL.

In September 1982, Stevens moved to California.  Phillip Brooks, a general partner, was appointed the assistant managing

general partner. His responsibility was to carry on the partnership's business activities in Stevens' absence. Brooks resigned from this position on June 25, 1983, although he remained a member of the management committee. In June 1983, Stevens resigned as managing general partner.

In 1983, Brooks prepared a second amendment to the partnership agreement. This amendment purported to vest management and control of the business in a management committee consisting of five general partners. Although the amendment lacked the signatures of some of the general and limited partners, it was filed with the State of Louisiana on January 28, 1986 and MBFL operated under the new management structure. Brooks was one of the five members of the firm's new management committee. The committee hired Albert J. Derbes, III, a tax lawyer and certified public accountant, to act as manager of the partnership.

Stevens executed the partnership's tax information return for 1983, and Brooks executed the 1984, 1985, and 1986 returns. In 1985, the IRS discovered that MBFL had claimed too high a depreciation deduction for tax years 1983, 1984, and 1985. On May 6, 1985, IRS agent Joette Pfeiffer contacted the accountant who prepared MBFL's 1983 tax return to find out who was MBFL's tax matters partner for 1983. The accountant contacted Derbes, who informed Pfeiffer that Brooks was the TMP.

On April 8, 1986, Pfeiffer met with Derbes and Brooks. During that meeting, Brooks executed a form authorizing Derbes to represent MBFL before the IRS. Pfeiffer also asked Derbes to have

3

the partnership's TMP execute a form consenting to the extension of time to assess tax. Brooks indicated that he was not certain whether he could execute the form because he did not know which partner was going to act as MBFL's TMP. Pfeiffer then informed Derbes and Brooks that if the partnership failed to designate a TMP, the IRS would designate one for it. Derbes and Brooks left the room, and Pfeiffer inspected MBFL's books and records, including the original and amended partnership agreements. Before Pfeiffer left that day, Derbes produced a consent signed by Brooks extending the limitations period for the 1983 tax year to December 31, 1987. Both Derbes and Brooks believed that Brooks had the authority to sign the consent.

Over the next few years, Brooks executed consents further extending the limitations period for tax years 1983 through 1986. On each form, Brooks signed on the line designated for the TMP.[1] Brooks executed the consents in an effort to gain time to substantiate the deductions and avoid involvement in a complicated tax dispute at a time of severe financial difficulty for the partnership.

On June 28, 1991, Derbes filed a Freedom of Information Act request with the IRS, seeking documents pertaining to MBFL's tax years 1983 through 1986. One of the documents that the IRS produced was a memorandum prepared in July 1989 by an attorney at

---

[1] On a few of the forms, Brooks signed his name in the space labelled "Authorized Representative." In those instances, however, Brooks' name was typed directly above his signature in the space labelled "Tax Matters Partner."

4

the IRS.  The memorandum questioned the validity of the consents executed by Brooks for tax years 1983, 1984, and 1985, concluding that Brooks had not been properly designated as the TMP and, accordingly, lacked the authority to execute the consents.

On August 15, 1991, MBFL filed a protest with the IRS, claiming that the period of limitations for assessment had expired for tax years 1983, 1984, and 1985 because Brooks lacked the authority to execute the consent forms extending the period of limitations.  On December 26, 1991, the Commissioner mailed notices of final partnership administrative adjustment for years 1983 through 1986.  MBFL filed a petition in the Tax Court contesting the adjustments on their merits and on the basis that the period of limitations had expired for years 1983 through 1985.  MBFL subsequently conceded the merits of the adjustments, leaving only the issue of whether the adjustments were barred by limitations. On May 17, 1993, the Tax Court held a trial.  On January 31, 1994, the Tax Court ruled that the consents executed by Brooks were effective and, therefore, the period of limitations for tax years 1983, 1984, and 1985 had not expired.  MBFL filed a timely notice of appeal.

## II.

The statutory period for assessing any income tax attributable to partnership items for a partnership's tax year expires three years after the partnership files its partnership information return or three years after the last day for filing such return,

5

whichever is later. I.R.C. § 6229(a). Section 6229(b)(1)(B), however, permits extension of that time "with respect to all partners, by an agreement entered into by the Secretary and the tax matters partner (or any other person authorized by the partnership in writing to enter into such an agreement)." The parties both agree that for the periods relevant to this appeal, Brooks was not the TMP. See id. § 6231(a)(7) (defining TMP). Thus, the issue is whether the partnership authorized Brooks in writing to execute the consents. While there was no specific agreement authorizing Brooks to execute the consents, the Tax Court concluded that MBFL's partnership agreement provided the requisite writing and that Brooks' authority under that agreement encompassed execution of the consents. We disagree.

We first consider whether Brooks' status as a general partner in MBFL vested him with either actual or apparent authority to execute the consents extending the limitations period. Second, we address the Commissioner's argument that MBFL should be estopped from disclaiming Brooks' authority as the TMP.

A.

In order to vest Brooks with actual authority to sign the consents, the partnership had to have executed a document providing Brooks with that authority. I.R.C. § 6229(b)(1)(B). A number of Tax Court cases have held that a partnership agreement is a sufficient writing under § 6229(b)(1)(B). See Georgetown Petroleum-Edith Forrest v. Commissioner, 67 T.C.M. (CCH) 1952 (1994); Iowa Investors Baker v. Commissioner, 64 T.C.M. (CCH) 611

6

(1992); <u>Cambridge Research & Dev. Group v. Commissioner</u>, 97 T.C. 287 (1991). In the above cases, however, the partnership agreements expressly granted the general partners broad authority to act for the partnership. In <u>Iowa Investors</u>, for example, the partner that signed the consents had the authority to "'manage all partnership affairs, including . . . tax services . . . on behalf of the partnership to individual partners.'" 64 T.C.M. 611. Similarly, in <u>Cambridge Research</u>, the general partners, one of whom signed the contested consent, were authorized to "'manage and conduct the Partnership business. They may, for the furtherance of the business of the Partnership, borrow or lend money and pledge, mortgage, sell, assign, license or otherwise dispose of any or all of the Partnership property <u>and in general take any action or do anything in furtherance of the partnership business</u>.'" 97 T.C. at 289 (emphasis added by Tax Court). Finally, in <u>Georgetown Petroleum</u>, the partnership agreement authorized the general partner, who executed the consent form, "to make such tax elections and determinations as appear to be appropriate, and grant[ed] the general partner exclusive management and control of the business of the Partnership." 67 T.C.M. 1952.

MBFL's partnership agreement, by contrast, does not contain a broad grant of authority to any individual general partner. Indeed, there was significant trial testimony that general partners were not permitted individually to make decisions binding on the partnership. Section 2.01 of the first amendment to the partnership agreement states:

The overall management and control of the business and affairs of the Partnership shall be vested in the Managing General Partner and the Management Committee consisting of the Managing General Partner and the General Partners, all of whom will be collectively referred to as "The Management". The Management will act collectively on all decisions with respect to the management and control of the Partnership and their actions shall be binding on the Partnership and all Partners provided that they act within the scope of their authority as granted by these partnership articles.

Below, MBFL argued that because the only way in which the general partners were authorized to act was collectively and because Brooks' signing of the consents did not meet this requirement, the consents were invalid. The Tax Court disagreed. It read section 2.01 in conjunction with Article VII of the partnership agreement and with Louisiana law. Under Louisiana law, a general partner is a mandatary and may bind the partnership for actions taken within the ordinary course of business. La. Civ. Code Ann. art. 2814 (West 1994). Article VII of the partnership agreement restricts the authority of MBFL's general partners. Under that article, a general partner may not, without the approval of the management:

> (a) Assign, transfer, pledge, compromise, or release any of its claims or debts, except upon payment in full, or arbitrate or consent to arbitration of any of its disputes or controversy;

> (b) Borrow money in the Partnership name or use collateral owned by the Partnership as security for loans except as provided in Article II Section 2.01 hereof;

> (c) Lease or mortgage any Partnership real estate or interest therein or enter into any contract for such purposes.

The Tax Court concluded that since Article VII of the partnership agreement restricted a general partner's mandatary authority under only three circumstances, section 2.01's collective

8

decision making mandate applied only to those three circumstances. If this is true, then section 2.01 cannot be the source in the partnership agreement of a grant of general authority to an individual general partner for matters outside the scope of Article VII.

Even if we were to disagree with the Tax Court and adopt the view that section 2.01 applied to decisions beyond the scope of Article VII, the partnership agreement still could not be read as granting broad authority to any single general partner. Under this view, section 2.01 would instead require collective decision making for all decisions concerning the "management and control of the business and affairs of the Partnership."[2]

The only remaining source of actual authority that would permit Brooks, as a general partner, to bind the partnership is found in article 2814 of the Louisiana Civil Code. This provision grants agency authority to general partners acting in the ordinary course of the partnership's business. A statute, however, is not a sufficient written authorization. See I.R.C. § 6229(b)(1)(B)

---

[2]    The foregoing analysis would not change if the second amendment to the partnership agreement were found to be valid. The second amendment does not purport to amend Article VII; nor does it broadly grant authority to any single general partner:

> The overall management and control of the business and affairs of the Partnership shall be vested in the Management Committee comprised of five (5) General Partners serving one (1) year terms. The Management Committee will act collectively on all decisions with respect to the management and control of the Partnership and its actions shall be binding on the Partnership and all Partners provided that they act within the scope of their authority as granted by these partnership articles.

9

(consent may be executed by "any other person <u>authorized by the partnership in writing</u> to enter into such an agreement") (emphasis added).

B.

The Tax Court held that Louisiana law "empower[s] every general partner of a Louisiana partnership with the authority to bind the partnership when dealing with a third party in all transactions (other than those transactions involving the alienation, lease, or encumbrance of the partnership immovables), where a partner makes a manifestation of his authority to bind the partnership and the third party relies, in good faith, on the partner's purported authority."  We find this reliance on Brooks' apparent authority to be unavailing.

When a person other than the partnership's TMP is executing a consent to extend the limitations period, § 6229(b)(1)(B) requires that person to be authorized in writing by the partnership to execute the consent.  As discussed above, the partnership agreement does not vest Brooks with actual authority to sign the consents.  Nor do we find in the record any written document by the partnership that would vest Brooks with the apparent authority to execute the consents.  <u>See</u> Restatement (Second) of Agency § 8 cmt. a (1958) ("Apparent authority results from a manifestation by a person that another is his agent, the manifestation being made to a third person and not, as when [actual] authority is created, to the agent."); <u>see also</u> <u>Independent Fire Ins. Co. v. Able Moving &</u>

10

<u>Storage Co.</u>, 650 So. 2d 750, 752 (La. 1995) (applying Restatement (Second) of Agency § 8).

C.

For the first time on appeal, the Commissioner contends that MBFL is estopped from arguing that Brooks was not its TMP. In order for equitable estoppel to apply, the government must show that MBFL was aware of the facts, that MBFL intended the IRS to act on its representation that Brooks was the TMP, that the government did not know of the facts, and that the government reasonably relied on MBFL's representations to its substantial detriment. <u>See</u> <u>Keado v. United States</u>, 853 F.2d 1209, 1217-18 (5th Cir. 1988) (quoting <u>Moody v. United States</u>, 783 F.2d 1244, 1246 (5th Cir. 1986)).

Section 6231(a)(7), in relevant part, provides that "[t]he [TMP] of any partnership is . . . the general partner designated as the tax matters partner as provided in regulations."[3] The regulations, promulgated March 5, 1987, provide that the TMP is designated when, among other things, a designation is filed with the IRS. <u>See</u> Treas. Reg. § 301.6231(a)(7)-1T (if designation is made at the time return is filed, designation is on or attached to the partnership return; otherwise, statement designating TMP is filed at the service center in which the partnership return was filed).

---

[3] The parties stipulated that Gerald Stevens was the largest shareholder. Thus, the IRS could not have been relying on the statutory provision that states that in the absence of a designation, the partner with the largest profits interest is the TMP. <u>See</u> I.R.C. § 6231(a)(7)(B).

11

Because any designation of a TMP would be filed with the IRS itself, the IRS cannot reasonably rely on the representations of a third party as to the identity of a TMP.  Cf. Herrington v. Commissioner, 854 F.2d 755, 758 (5th Cir. 1988) (duty of taxpayer to report consistently "does not apply when the inconsistency concerns a pure question of law and both the taxpayer and the Commissioner had equal access to the facts"), cert. denied, 490 U.S. 1065 (1989); see also Lewis v. Commissioner, 18 F.3d 20, 26 (1st Cir. 1994) ("[T]he misstatement must be one on which the government reasonably relied.") (emphasis added).  Thus, the Commissioner's estoppel argument applies to only one of the consents executed by Brooks.  On April 8, 1986, Brooks executed a consent for the tax year 1983.  At that time, there was no regulation dictating the way in which a partnership designated its TMP.  The fact that estoppel applies to that consent, however, does not change the result in this case.  The 1986 consent merely extended the limitations period to December 31, 1987 for tax year 1983.  Subsequent consents extended that period to December 31, 1991.  The final partnership administrative adjustment was issued on December 26, 1991, far beyond the valid consent's extension date.

### III.

The final issue in this appeal was raised by the Commissioner and is not contested by the parties.  The assessments for 1983, 1984, and 1985 involve reduction of claimed depreciation

12

deductions.  In 1986, MBFL sold its assets and based its report of long-term capital gains on the pre-assessment bases of the assets. When the Tax Court found that the statute of limitations had not run and that the assessments were permitted, it also found that MBFL had concomitantly lower long-term capital gains and was entitled to a reduction in its 1986 tax liability.  Because we conclude that the assessments are barred, MBFL's claimed depreciation deductions do not change, the bases of MBFL's assets do not change, and any long-term capital gain treatment resulting from the sale of those assets does not change.

IV.

For the foregoing reasons, we REVERSE the judgment of the Tax Court and RENDER judgment for MBFL.