T.C. Memo. 1996-299


UNITED STATES TAX COURT


CASCADE PARTNERSHIP, JAMES M. AND MARGARET C. COSTELLO,
TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18078-90.                    Filed June 26, 1996.


Larry N. Johnson, for petitioner.

Edward D. Fickess, for respondent.


MEMORANDUM OPINION

GERBER, Judge:  The parties, by means of cross-motions for partial summary judgment, seek resolution of their controversy over whether the period for assessment had expired at the time respondent mailed the Notice of Final Partnership Administrative Adjustment (FPAA).  More specifically, the question we consider is whether a consent (to extend the period for assessment) executed by one of the partnership's general partners,

effectively extended the assessment period. Petitioner contends that the general partner, who executed the consent, was not authorized to do so and that the consent is of no effect. Respondent contends that the general partner was authorized to execute the consent, thereby extending the period for assessment. Alternatively, respondent argues that, even if the executing general partner was unauthorized, petitioner is equitably estopped from now asserting that the general partner lacked authority.

## Background

Cascade Partnership (Cascade) was formed under the Uniform Partnership Act of the State of Washington, Wash. Rev. Code sec. 25.04 (West 1969), on November 9, 1982, by 20 individuals. Each of Cascade's 20 partners was also a partner in Price Waterhouse, a certified public accounting partnership that also specializes in tax matters. John R. Walsh, Jr. (Walsh), who also was a Price Waterhouse partner but not a partner of Cascade, was the promoter of Cascade. Walsh promoted partnership interests to James M. Costello (Costello) and 19 other partners of Price Waterhouse. Walsh was appointed by the 20 partners to manage Cascade by means of the following partnership language:

> The partners appoint John R. Walsh, Jr., as the manager who shall have all the rights to manage the partnership assets including designating an agent to serve under his direction. He shall not be liable for any loss or diminution of the partnership's assets unless due to his gross negligence, misconduct or lack of good faith.

The partnership agreement also contained the statement that "All decisions and management of the partnership shall be made by the majority of the shares held by the partners." The partnership shares were in $1,000 units, with total capital investment set at $300,000. No partner possessed a majority percentage interest in Cascade. The partner with the largest percentage interest, as of the close of 1982, was William Smart.

Cascade, a TEFRA[1] partnership for Federal tax purposes, was formed as an investment vehicle for the 20 Price Waterhouse accounting partners to collectively invest as a limited partner in Wall Street Associates (Wall Street), a partnership not subject to the provisions of TEFRA. Wall Street issued a Schedule K-1 in Cascade's name in care of Walsh. By a letter dated February 27, 1985, respondent notified Cascade of the commencement of an examination of Cascade's 1982 and 1983 income tax returns under the unified partnership audit procedures of sections 6221-6233.[2] The letter was addressed to "Cascade Partnership, Tax Matters Partner, Third Floor, Times Square Building, Seattle, Washington 98101." An Information Document

---

[1] TEFRA partnership provisions were added to the Code by the Tax Equity & Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 324, 648.

[2] All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Request (Form 4564), requesting financial and partnership information, was sent along with the February 27, 1985, letter.

Cascade's partnership return for 1982 was signed on behalf of the partnership by Costello as a general partner. It was also signed by Walsh as preparer. Initially, respondent's agent dealt and corresponded with Walsh in connection with Cascade's audit. In a June 12, 1985, letter to Walsh at Price Waterhouse, respondent's agent confirmed a July 1985 appointment with Walsh and indicated that the examination would be limited to inspecting certain requested records and verifying each partner's Cascade basis. In that letter, the agent pointed out that Cascade was a pass-through partnership that would most likely be placed in suspense until the examination of Wall Street was completed. From the correspondence, it appears that respondent's agent believed that Walsh was authorized to represent Cascade.

After receiving notice that the period for assessment would soon expire, respondent's agent sent a letter dated January 22, 1986, to Cascade, in care of Walsh, attaching a Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership (Form 872-O) and requesting its execution to extend the assessment period. After receipt of the Form 872-O, Walsh, realizing that he was not a partner of Cascade, contacted Costello, the only partner of Cascade who worked in close approximation to Walsh at Price Waterhouse. Walsh advised Costello that a partner of Cascade had to sign the Form 872-O,

and Costello agreed to be the signing partner. Costello signed the Form 872-O on February 13, 1986, and returned it to respondent's agent. Costello signed the Form 872-O on the line designated for the tax matters partner (TMP), rather than the one designated for a representative of the partnership, because he was a general partner of Cascade. Costello did not do any research to determine if he was or was not authorized to sign as TMP and/or on behalf of Cascade or its other partners. During March 1986, Walsh received a copy of the Form 872-O that had been counter-executed on behalf of respondent on March 4, 1986.

By a March 11, 1988, letter addressed to Cascade, in care of Costello as TMP, respondent transmitted a summary report of the examination that contained a single adjustment disallowing $1,083,338 of pass-through loss claimed through Wall Street. The letter also directed Costello, as TMP, to provide a copy of the summary report to the other partners. Costello, in an April 5, 1988, letter, corresponded with respondent, advising that Wall Street's examination was at the Appeals level and, because of Cascade's pass-through status, petitioner chose not to attend a closing conference. Petitioner protested with respect to the summary report in a September 27, 1988, document that was signed by Costello as TMP. Respondent's agents continued to send correspondence to Costello addressed to him as Cascade's TMP. Costello received a May 14, 1990, FPAA containing a determination disallowing the pass-through loss claimed through Wall Street.

Costello's petition to this Court, filed August 13, 1990, disagreed with the adjustment and requested that the case be held in suspense until the outcome of the Wall Street examination. At the time Costello executed the petition, he had become aware that there may be some question about whether he was authorized to be Cascade's TMP. In spite of this recognition, Costello signed the petition to this Court containing the allegation that it was filed by him in his capacity as Cascade's TMP. By an August 13, 1990, order of this Court, the caption of this case was changed. The original caption (as shown on the petition) reflected "James M. Costello and Margaret C. Costello" as petitioners. The order changed the caption to reflect "Cascade Partnership, James M. and Margaret C. Costello, Tax Matters Partner". On March 27, 1995, almost 5 years later, petitioner moved to amend its petition in order to plead that the assessment period had expired prior to the time respondent mailed the FPAA in this case. Thereafter, the parties each moved for partial summary judgment.

Walsh had not been formally designated as Cascade's TMP, and he had not received a power of attorney from Cascade or its partners for the specific purpose of representing the partnership before respondent. Costello, although a general partner of Cascade, had not been expressly designated as Cascade's TMP, and he was not the partner with the largest partnership interest. Costello held himself out as an agent of Cascade and permitted respondent to believe that he was Cascade's TMP. Respondent's

agents relied to their detriment on Costello's manifestation of authority to act as TMP on behalf of Cascade. The other 19 partners of Cascade were aware that Costello held himself out as Cascade's TMP.

## Discussion

Rule 121(b) provides that a motion for summary judgment shall be allowed and considered if the pleadings and admissions show that there is no genuine issue of material fact and that a decision may be rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Marshall v. Commissioner, 85 T.C. 267, 271 (1985). The facts are viewed in a light most favorable to the nonmoving party. Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). In this case both parties moved for summary judgment based on documents and affidavits. There is no genuine issue of material fact as between the parties, and this matter is ripe for resolution by means of summary judgment.

Petitioner argues for a decision in its favor because the FPAA was issued outside the normal 3-year period for assessment because the consent to extend the assessment period was executed by a person who was without capacity to do so. More specifically, petitioner contends that under the applicable statutes and regulations Costello was not Cascade's TMP,[3] and he was otherwise not authorized in writing by the partnership to extend the assessment period.

Conversely, respondent argues that the consent was valid and effective to extend the period for assessment to include the date on which the FPAA was mailed. More specifically, respondent contends that under the partnership agreement and the law of the State of Washington, Costello was authorized in writing to bind the partnership to the consent extending the assessment period. Addressing petitioner's argument, respondent contends that even if Costello was not an authorized TMP, petitioner should be equitably estopped from now denying that Costello lacked authority to execute the consent to extend the assessment period.

Section 6229(a) generally provides for a 3-year period within which respondent may assess a partnership or affected

---

[3] A TMP is defined as the general partner designated as such by the partnership or the general partner with the largest profits interest at the close of the year in question (or, where there is more than one such partner, then the one of such partners whose name appears first alphabetically). If no partner is designated and the Secretary determines it is impracticable to apply the above rules, then the Secretary may select a TMP. Sec. 6231(a)(7).

item.  Section 6229(b) permits extension of the 3-year period by means of agreement.  Subparagraph (A) of section 6229(b)(1) permits an individual partner to extend the assessment period with respect to that partner.  Subparagraph (B) of section 6229(b)(1) provides for extensions applicable to all partners by means of agreements entered into with the TMP or any other partner who is authorized in writing by the partnership to enter into an extension agreement.

At the time (early 1986) that Costello executed the Form 872-O, no regulations had been issued concerning the provisions of section 6229.  Temporary procedural regulations were adopted providing specific requirements for the written authorization for persons, other than a TMP, to execute a consent binding on all partners after the 1986 consent to extend the assessment period had been executed.  See sec. 301.6229(b)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6789 (Mar. 5, 1987).  Under the temporary regulation, the statement or writing is to contain the identity of the partnership and the person being authorized, along with their address and taxpayer identification number.  In addition, the particular taxable year(s) of the partnership was to be identified, and the writing was to be signed by all persons who were general partners at any time during the effective year or years of the authorization.

In Amesbury Apartments, Ltd. v. Commissioner, 95 T.C. 227, 242 (1990), we held that the taxpayer's reliance on this

temporary regulation for a consent executed prior to the regulation's issuance was misplaced. We held that the regulation would not invalidate prior authority given to execute a consent signed by all persons who were general partners at any time during the effective year or years of the authorization. Petitioner relies on the temporary regulation because no writing existed here.

It was also noted in Amesbury Apartments, Ltd. v. Commissioner, supra at 242-243, and Cambridge Research v. Commissioner, 97 T.C. 287, 295 (1991), that the regulation's specific requirements for authorizing a person to execute a consent are not mandatory. More significantly, respondent would not have been informed by such notification, as set forth in the regulation, because that regulatory requirement did not exist at the time the consent in question was executed by Costello.

Respondent does not address the temporary regulation. Instead, respondent relies on State of Washington statutory provisions for her argument that Costello, as a general partner, was capable of binding Cascade to the agreement to extend the assessment period. In particular, respondent relies on Wash. Rev. Code section 25.04.090, which, in pertinent part, provides:

> Partner agent of partnership as to partnership business.
>
>     (1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in

the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

A partner who deals with third persons without notice of any lack of authority, binds the other partners "if the transaction be such as the public may reasonably conclude is directly and necessarily embraced within the partnership business as being incident or appropriate to such business according to the course and usage of conducting it."  Cummings v. Nordmark, 438 P.2d 605, 606 (Wash. 1968) (quoting Merrill v. O'Bryan, 93 P. 917, 918 (Wash. 1908)).  Whether a partner is within the scope of his authority is a question for the trier of fact.  Dowling v. Exchange Bank, 145 U.S. 512 (1892); Cummings v. Nordmark, supra at 606.

Respondent also relies on Amesbury Apartments, Ltd. v. Commissioner, supra, a case in which we held valid a consent to extend the assessment period that was signed for the partnership by an accountant.  The accountant signed the consent based on a power of attorney authorizing him to represent that partnership before the Internal Revenue Service, including the power to extend the period for assessment with respect to the partnership. The power of attorney had been signed by one of two general partners, who was not the TMP.

Respondent argues that a partnership can only act through its agents and that a general partner is an agent who, under Washington law, may bind a partnership. In this regard, and in connection with Washington law, this Court has held that the execution of a consent is not an extraordinary act, and thus not beyond the authority normally extended to a general partner. Cambridge Research v. Commissioner, supra at 297.

Petitioner argues that the partnership agreement modified the normal provisions of the Washington statute, which embodies the Uniform Partnership Act. Petitioner refers to paragraph 11 of the partnership agreement that provides: "All decisions and management of the partnership shall be made by the majority of the shares held by the partners." Petitioner contends that the quoted provision generally limits any partner from acting on behalf of the partnership.

In a similar case involving a Louisiana partnership, we held that a partner, who was neither the TMP nor explicitly authorized by the other partners, had effectively extended the period for assessment by joining in the execution of consents with the Government agent. See Medical & Business Facilities, Ltd. v. Commissioner, T.C. Memo. 1994-38, revd. 60 F.3d 207 (5th Cir. 1995).[4] This Court's holding in that case was based on two analyses. First, under Louisiana law and Federal tax cases, it

---

[4] See also Investment Engrs., Ltd. v. Commissioner, T.C. Memo. 1994-255.

was held that the general partner, who signed the consent, had
authority to bind the partnership.  Second, interpreting the
partnership agreement in that case, we held that the signing
partner was not prohibited from extending the period for
assessment for the partnership.

However, the U.S. Court of Appeals for the Fifth Circuit
reversed our decision in Medical.  The Court of Appeals disagreed
with our interpretation of the partnership agreement.  Based on
its interpretation, the Court of Appeals found that the general
partner who signed the consent, under State law, was not
authorized to bind the partnership.  Finally, the Court of
Appeals addressed an estoppel argument raised at the appellate
level.

The Court of Appeals stated that

> In order for equitable estoppel to apply, the
> government must show that * * * [the partnership] was
> aware of the facts, that * * * [the partnership]
> intended the IRS to act on its representation that * *
> * [the signing partner] was the TMP, that the
> government did not know of the facts, and that the
> government reasonably relied on * * * [the
> partnership's] representations to its substantial
> detriment.  * * *  [Medical & Business Facilities, Ltd.
> v. Commissioner, 60 F.3d at 212.]

The Court of Appeals also explained that the regulations,
which provided the circumstances under which a TMP is designated
and made known to the Commissioner, were promulgated March 5,
1987.  See sec. 301.6231(a)(7)-1T, Temporary Proced. & Admin.
Regs., 52 Fed. Reg. 6791 (Mar. 5, 1987).  That regulation

required the designation of a TMP at the time the return is filed or, subsequently, by a statement filed at the service center at which the partnership return was filed. The Court of Appeals then reasoned that the Commissioner would be on actual notice of the identity of the TMP after March 5, 1987, and would not be in reasonable reliance of a partner's portrayal as TMP. Based on that reasoning and the fact that several consents were executed by the general partner as TMP, both before and after the regulation was promulgated or enacted, the Court of Appeals in Medical held that estoppel did not apply. Because only one of the consents was executed prior to the promulgation of the regulation, the court held that "the Commissioner's estoppel argument applies to only one of the consents". Medical & Business Facilities, Ltd. v. Commissioner, 60 F.3d at 212.

The facts of this case are generally similar to those in Medical. One significant difference that distinguishes this case from Medical is that, in this case, only one consent was executed on March 4, 1986, which was prior to the March 5, 1987, promulgation of the regulation. The consent used in this case is of the open-ended variety, in that it continues in effect until certain action(s) are taken by the parties.

The facts in this case show that the partnership was aware of the circumstances. Costello executed documents as the TMP of the partnership. Walsh, the promoter and manager of the partnership, specifically requested Costello to execute the

consent.  Costello was requested by respondent's agents to notify the other partners of action taken by respondent.  There is no question that Costello, Walsh, and the other partners were aware that respondent was acting on Costello's execution of documents, including the consent and correspondence with respondent.  In addition, Costello signed the partnership return for the year in question.  We also note that Walsh, Costello, and the other 19 partners of Cascade were all partners in a nationally known firm of certified public accountants that, among other matters, specializes in Federal taxation.  Finally, it is clear that respondent did not know that Costello was not the appointed or qualified TMP and that Costello's representations were reasonably relied on to respondent's substantial detriment.  Under these circumstances, we hold that Cascade is estopped to deny Costello's authority to execute a consent binding the partnership to an extension of the period for assessment.

There is no need to express our agreement or disagreement with the rationale of the U.S. Court of Appeals for the Fifth Circuit.  This is so because the facts in this case are distinguishable from the facts in Medical & Business Facilities, Ltd. v. Commissioner, supra, as to the estoppel issue.  Moreover, the partnership's place of business was Washington State, and the U.S. Court of Appeals for the Ninth Circuit would be the appropriate appellate venue.  See sec. 7482(b)(1)(E); Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985

(10th Cir. 1971); <u>Lawrence v. Commissioner</u>, 27 T.C. 713 (1957), revd. on other grounds 258 F.2d 562 (9th Cir. 1958). The U.S. Court of Appeals for the Ninth Circuit has not addressed this specific question and, accordingly, it is not necessary to analyze whether the consent was properly executed under any other theory.

Additionally, the circumstances here are reminiscent of those we considered in <u>Mishawaka Properties v. Commissioner</u>, 100 T.C. 353 (1993) (<u>Mishawaka</u>). In <u>Mishawaka</u>, a TEFRA partnership petition filed during the period designated for the TMP was executed by a partner other than the TMP for that partnership. Neither Mishawaka Properties Co.'s partners nor respondent designated a TMP. About 4 years after the petition was filed and after pretrial and test case activity, Mishawaka Properties Co.'s partners moved to dismiss because the petition was filed by a partner other than a TMP.

Relying on <u>Kraasch v. Commissioner</u>, 70 T.C. 623 (1978), we held that the Mishawaka Properties Co. partners implicitly adopted and/or ratified the filing of the petition by knowingly allowing their interests to be represented before the Internal Revenue Service and before this Court. In part, our holding relied on California cases providing that

> "A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is 'inconsistent with any reasonable

intention on his part, other than that he intended approving and adopting it.'" * * *[Rakestraw v. Rodrigues, 500 P.2d 1401] at 1405 [1972] (quoting Ballard v. Nye, 138 Cal. 588, 597, 72 P. 156, 159 (1903)).

Mishawaka Properties v. Commissioner, supra at 364-365. We further stated that:

The underlying concept of the implied ratification principle is to reach the same result where the person(s) with control over the authority allow others to exercise it without repudiation. That principle is no less appropriate or proper in the setting of sections 6226 and 6231 than in sections 6212 and 6213.

Id. at 365. Although the holding in Mishawaka is not directly relevant, the circumstances and rationale of that case are comparable to those considered in this case.

To reflect the foregoing,

An appropriate order will be issued granting respondent's and denying petitioner's motion for partial summary judgment.